**BOCJL CORP. et al. v. UNITED STATES.**

**No. 48816.**

United States Court of Claims.

Oct. 2, 1951.

William H. Parmelee, Pittsburgh, Pa., for plaintiffs. Almon S. Nelson, Washington, D. C., and William G. Young, Pittsburgh, Pa., were on the brief.

Arthur Raisch, Detroit, Mich., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant. T. Hayward Brown and E. R. Weisbender, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This is a patent suit. The plaintiffs claim that certain propellers used by the Government are an infringement of a propeller patent owned by the plaintiffs.

The case is largely factual and will be discussed briefly since our findings practically dispose of the issues.

Application for the patent in suit, entitled "Propeller" and known as the Rindfleisch patent, was filed January 27, 1936, and letters patent were issued September 30, 1941. Plaintiffs are the sole owners.

Propeller blades are set at an angle, called the pitch, so that the rotating propeller bites into or screws itself through the air, advancing as it turns and pulling the airplane with it. The higher the pitch angle of the blade, the farther the propeller will advance through the air per revolution and the greater the engine power required to keep the propeller rotating at a given speed. If the pitch is lowered less power is required.

As in most kinds of mobile machinery more power is required during the take-off and climb than under normal flight conditions. In automobiles the problem is met by shifting gears. In airplanes the problem has led to the development of the

variable pitch propeller, in the take-off or climb the propellers being set at a low pitch angle so as not to overload the engine. When the cruising level has been reached the pitch angle is increased so as to get greater speed and distance.

The prior art exemplifies a gradual development, starting with only two pitch angles, high and low, manually controlled by the pilot and finally reaching the stage of the automatic variable pitch propeller, hydraulically operated and controlled by a speed-responsive device known as a governor.

When the engine, or one of the engines, fails, the associated propeller continues to rotate due to the flowage of air over the propeller blades. This is called windmilling. If the engine failure is due to jamming or internal breakage the engine might grind itself to pieces or cause other damage, or waste the power of other engines.

This problem has led to various prior art methods of "feathering" the propeller, which is simply a method of changing the pitch angle of the blades until the blades are substantially parallel to the hub axis at which point the flow of air will not cause the blades to continue in motion.

The stated purpose of the patent in suit is as follows:

"The primary object of my invention is to provide a propeller construction which is variable and automatically controllable by a governing mechanism which is regulated by the rotative speed of the propeller during the various maneuvers of the aircraft, or by an increase or decrease in the engine power, or both.

"A further object is to provide an isolated independent fluid pressure and control system for operating automatically the pitch changes of the propeller.

"A further object is to provide automatic means for full feathering the propeller.

"A further object is to provide emergency means controlled by the pilot for full feathering the propeller.

"A further object is to provide novel means for attaching and supporting the propeller blades on the hub."

A simplified explanation of the Rindfleisch patent is set out in detail and illustrated in finding 8. It provides for propeller blades that are capable of rotation about their own axes, which rotation is obtained by links connected with a movable nosepiece, the fore and aft movement of which increases or decreases the pitch position of the blades. This motion is obtained by hydraulic pressure from a self-contained reservoir of fluid, which is placed under pressure by gear pumps, driven by a shaft attached to the crank case in such a way as to be operated when the propeller is in motion.

The hydraulic pressure, which acts against a piston in the nosepiece, is controlled by a governor that consists of a weighted arm responding to centrifugal force which varies with propeller speed, and which acts against a restraining spring. Control of the hydraulic fluid and operation of the governor are described in findings 9 and 10. The automatic and manual full-feathering operation are fully described in findings 12 to 19, inclusive.

The invention in suit was conceived by Rindfleisch in September 1935 and constructively reduced to practice by filing his patent application in January 1936.

The record in this case does not show that the plaintiffs ever issued any licenses under the patent in suit, nor that they ever manufactured, sold or used any propellers of the type embodied in such patent.

The claims of the patent in suit when measured by the prior art subsequently discussed are indicative that the patent is in no sense a pioneer but is directed merely to structural location and arrangement of individual parts already known in the art. The claims, in the light of the specifications and the prior art, must be rather narrowly construed. See Yates v. Jones, 4 Cir., 176 F.2d 794.

Within the six-year period immediately preceding the filing of plaintiffs' petition the defendant, without any license from or consent of the plaintiffs, had manufactured or caused to be manufactured, and used, an automatic, pitch-controlled propeller known as the aeroprop. These are the alleged infringing structures. An illustrated

description of these structures together with their purposes and points of similarity and dissimilarity may be found in findings 22 to 27, inclusive.

At the time of the conception (September 1935) of the invention which later materialized into the patent in suit, there was available to the public in the way of prior art, numerous patents relating to the subject matter of the patent in suit. These are described in findings 28 to 51, inclusive.

The July 1928 issue of the Royal Aeronautical Society Journal contained an article entitled "The Variable Pitch Air Screw." This article and other references contained in finding 32 disclose propeller pitch adjusting mechanism hydraulically operated. The Caldwell patent No. 2,174,-717, used as a basis for the disclosure of a prior invention, was conceived May 16, 1935, reduced to practice with diligence and flight-tested on June 30, 1936. This invention featured a propeller that was full feathered and unfeathered in flight. It apparently, however, did not have a self-contained reservoir and did not use fluid, except lubricating oil from the engine which drives the propeller. (See finding 29.)

The two Walker patents (finding 30), issued by the United States, disclose a variable propeller in which the pitch of the blades is adjusted by means of an electric motor incorporated in the hub mechanism of the propeller. The pitch of the blades is increased or decreased by means of a centrifugal governor. There is also an independent switch mechanism by which the pitch of the propeller may be manually controlled. These patents do not disclose a hydraulic or fluid pressure system.

The McCauley patent (finding 31) discloses a hydraulic pressure system in which oil pumps are suggested as the source of hydraulic pressure, but it does not teach the use of hydraulic pressure which would automatically adjust the pitch in accordance with the needs of the propeller.

The Hele-Shaw references (finding 32) disclose a hydraulic mechanism for adjusting change of pitch, the mechanism being attached to the propeller. No self-contained reservoir is disclosed.

A patent to Caldwell, No. 1,893,612 (finding 39), discloses a variable pitch propeller, the variation being brought about by fluid pressure controlled by a centrifugal governor or by the pilot. Lubricating oil from the engine is used as the source of hydraulic pressure.

The patent (British) to Salmon describes a variable pitch propeller (set out in finding 40), the functioning of the structure being defined in the patent as follows: "1. Automatically controlling variable pitch propellers used on aircraft, by means of an oil or other fluid pump, the speed of which is caused automatically to change with the speed of the aircraft, under the action of the air, substantially as described." This patent discloses a self-contained reservoir.

The Havill patent, application filed June 25, 1934, and letters patent issued November 5, 1935, is important in that it discloses a variable pitch propeller, the angle or pitch of the blades being determined by several interacting forces. The servomotor is operated by hydraulic fluid under control of a centrifugal governor. The patent discloses an automatic constant-speed propeller with a fluid reservoir. The patent is described in detail in findings 41 to 44, inclusive.

The Waseige patent (finding 45), the Bace patent (finding 46), and the Mader patent (finding 47), each discloses automatic and manually controlled propeller pitch adjustment mechanism.

Claims Nos. 8, 25, 26, 27, and 31 are involved in this suit.

Claim No. 8 is directed to a hydraulically actuated constant-speed propeller with the elements combined in such a way that the pitch of the propeller is controlled in accordance with its speed, and also claims a means for manually full-feathering the propeller.

The combining of a constant-speed propeller mechanism and a manually feathering mechanism is shown in the Hele-Shaw and the Caldwell patents. The terminology of this claim is applicable to the type of Government structure which utilizes manual full feathering.

■■ The record is clear that the addition of the manual full feathering means

to the Rindfleisch propeller having a predetermined rotative speed produces no conjoint result. The manual full feathering propeller operates in the same old way to produce full feathering of the propeller under certain conditions and the governor-controlled variable pitch propeller operates in the same old way to produce predetermined engine or propeller speed. They do not act in concert. Claim 8 is void because it is a mere aggregation of old elements each of which functions in the same old way and which do not cooperate to produce a conjoint result. We quote from the opinion in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: " * * * The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

 The phraseology in Claim 25 is set out and its basis outlined in findings 55 and 56.

When the wording of this claim is laid alongside defendant's structure it will be found that the construction and arrangement are different. The defendant's blade-actuating unit is not secured to the hub and shaft at the forward end, but is located in the rear end between the propeller and the forward end of the crank case. The defendant's valve means which operates to control the oil circulation to the servomotors, as well as the means for controlling the valve, are placed between the propeller and the engine instead of at the forward end of the shaft.

Claim 26 is substantially the same as Claim 25 with the exception that Claim 26 contains the additional element described by the following language: "manually adjustable means for independently actuating the valves." The quoted language refers to the valve means in the unit for controlling the circulation of the fluid through the motor and reservoir. This part of the claim has reference to the adjustable cam means which controls the tension on the governor spring. For the reasons stated in connection with Claim 25 the phraseology of Claim 26 is not applicable to the Government structure.

As set out in finding 58, the terms of Claim No. 27 are also not applicable to the Government structure.

The terms of Claim 31 are applicable to both the feathering and non-feathering forms used in the Government structure. They are also equally applicable to the United States patent to Havill as shown in findings 41 to 44, inclusive. The means of controlling the flow of hydraulic fluid to Havill's servomotor is almost identical in construction and in its function with the defendant's governor-distributor valve. The claim is invalid in view of the prior art as disclosed in the Havill patent.

For the reasons stated herein and as further set out in detail in our findings, Claims 8 and 31 are invalid, and the record does not show infringement of any of the claims in issue. The petition is dismissed.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.