Martin **DWYER**
v.
The **UNITED STATES.**
No. 205-59.

United States Court of Claims.
March 18, 1966.

James H. Callahan, New York City, for plaintiff. Ralph L. Chappell, New York City, attorney of record. Kenyon & Kenyon, New York City, Sprague & Stern, Mineola, N. Y., of counsel.

Jack B. Stevens, Arlington, Va., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. T. Hayward Brown, Washington, D. C., of counsel.

Before COWEN, Chief Judge, REED, Justice (Ret.), sitting by designation, and LARAMORE, DAVIS and COLLINS, Judges.

PER CURIAM:

This case was referred to Trial Commissioner Donald E. Lane who, under the order of reference, filed his opinion, findings of fact and recommended conclusions of law on July 1, 1964. Exceptions were filed to the commissioner's findings and recommended conclusions of law by the parties, briefs of the parties were filed and the case has been argued orally. Since the court agrees with the commissioner's findings, his opinion and his recommended conclusions of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. It is, therefore, concluded that patent No. 2,397,114 is valid and that the claims thereof in suit, claims 1, 2, 3, 4, 6 and 7 have been infringed; that patent No. 2,519,123 is invalid and not infringed; and that patent No. 2,-455,242 is invalid. Judgment is entered to this effect with the extent of liability on patent No. 2,397,114 to be determined in further proceedings before the commissioner.

OPINION OF COMMISSIONER

This is a patent suit under the provisions of 28 U.S.C. § 1498, in which plaintiff seeks to recover reasonable and entire compensation for the unauthorized use of three patented inventions. Plaintiff charges infringement of claims 1–4, 6, and 7 of U.S. Letters Patent 2,397,114 which issued to one Ralph Anzalone March 26, 1946, on an application filed January 21, 1941; claims 1, 4, 6, and 7 of U.S. Letters Patent 2,519,123, which issued to plaintiff and Anzalone August 15, 1950, on an application filed July 10, 1947; and claims 1, 2, 7, and 8 of U.S. Letters Patent 2,455,242, which issued to plaintiff November 30, 1948, on an application filed July 21, 1945. The patents in suit will be referred to hereinafter as the '114, '123, and '242 patents. Plaintiff was at the time of this suit the owner of the entire right, title, and interest in all of the patents in suit. It is found that the claims in suit of the '114 patent are valid and infringed, that the claims in suit of the '123 patent are not infringed and are invalid, and that the claims in suit of the '242 patent are invalid.

The '114 patent relates to a rocket type signal construction designed to be hand fired and yet capable of carrying a signal to relatively high altitudes. The '123 patent relates to a completely self-contained, hermetically sealed signal device, the alleged inventive feature being the

arrangement of the outer container for a rocket signal construction much like the one disclosed in the '114 patent. The '242 patent discloses a combination day-night distress signal in which a flare, used for night signaling purposes, and a smoke compound, used for day signaling, are aligned in spaced end-to-end relationship in a single container. The patent disclosures and the claims in suit are described in greater detail in the accompanying findings of fact.

Plaintiff has charged that the Army Signal, Ground, White Star, Parachute, Model T-73, hereinafter referred to as the T-73, infringes the claims in suit of both the '114 and '123 patents. The Navy Signal (Distress Day and Night) Mark 13 Mod 0, hereinafter referred to as the Navy Day-Night Signal, is charged to infringe the claims in suit of the '242 patent. Defendant has admitted procurement of at least one of each of the accused structures. The parties have agreed to a separation of issues for trial. The questions of infringement and validity of the claims in suit are now before the court. The several issues of law involved are discussed in the following comments.

Defendant has attempted to avoid liability under the three patents in suit by urging that all of the claims in suit of these patents are invalid as failing to define invention over the prior art, and that none of the claims in suit of the '114 and '123 patents are infringed. It has also been contended that the patentee of the '114 patent was not the first inventor of claims 6 and 7 of that patent, both of which are in suit. Defendant further contended that the claims of the '242 patent are invalid because they recite an aggregation.

■ Turning first to the '114 patent, it should be noted at the outset that both the T-73 and the '114 Signals perform substantially the same function and obtain substantially the same result. They are both designed to be fired by hand and to deliver a payload comprising a flare attached to a parachute to a relatively high elevation at which point the flare-parachute combination is expelled so that it can slowly descend with the flare burning. Both structures have what is described in the '114 patent as a "minor launching charge" which provides sufficient force to eject the rocket assembly a safe distance from the firer, at which time a "major launching charge" is ignited and propels the signal to the desired height by rocket action. Defendant has contended that there is no infringement of any of the claims 1-4, 6, and 7 of the '114 patent, because of a number of structural differences which exist between the T-73 Signal and the structure disclosed and claimed in the '114 patent. Of these differences to which defendant has pointed, the only ones warranting consideration are the recitals in claims 1-4 that the vanes of the '114 construction extend outwardly in a substantially radial or radial direction when the rocket projectile is launched, as contrasted with the substantially tangential position which the vanes of the T-73 Signal assume upon discharge of the rocket projectile, and that the vanes of the T-73 have no spring means to urge them open. While the shape of the vanes of the T-73 does differ to some extent from the configuration of the '114 vanes, this difference is not of such significance that infringement can be avoided. The vanes of each of the structures operate in essentially the same way to provide flight stabilization for the rocket signal, and they must under the circumstances be regarded as equivalents. Although the vanes of the T-73 are not urged outwardly by a separate *spring means*, they have inherent flexibility which constitutes a spring means within the meaning of that term as used in the '114 patent. The claims of the '114 patent are not limited to the specific coil spring embodiment shown. It should be noted that claim 6 contains no recitation of vane structure, and claim 7 which does, includes no recital that the vanes must be radial or substantially radial. Also, claim 7 does not recite a spring means for urging the vanes outward.

All of the other differences in structure between the accused T–73 and the '114 construction are immaterial variations which do not alter the substance of the invention. To make out a case of infringement it is not necessary that the accused device conform to that of the claimed structure in every particular, but only that it be sufficiently similar that it is in substance the same thing. See Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147 (1929). The inconsequential differences of structure between the accused T–73 Signal and the '114 device cannot have any significance attached thereto. The accused structure contains the essence of the invention disclosed and claimed in the '114 patent, and to avoid a finding of infringement under these circumstances would be manifestly unjust.

Defendant has produced numerous prior patents and publications, the more important of which are discussed in detail in the accompanying findings, in an effort to show that the '114, as well as the '123 and '242 patent claims in suit did not define a patentable advancement in the art.[1]

---

1. Defendant has urged that the '114 patent is invalid on the grounds that the invention was fully anticipated by the prior art and is invalid under 35 U.S.C. §§ 101 and 102, and that the invention was obvious to those skilled in the art at the time it was made and invalid under 35 U.S.C. § 103. In support of its defense of invalidity of the '114 patent, defendant has cited the following prior patents:

| U.S. patentee or foreign country | Number | Date |
|---|---|---|
| British Pat. | 2,826 | 1856 |
| Scholfield | Re. 478 | 1857 |
| Brand | 17,312 | 1857 |
| Sibley | 17,407 | 1857 |
| Scholfield | 21,278 | 1858 |
| Edge | 41,689 | 1864 |
| Orwig | 46,490 | 1865 |
| Hadfield | 51,176 | 1865 |
| Detwiller | 79,963 | 1868 |
| French Pat. | 432,836 | 1911 |
| German Pat. | 308,831 | 1918 |
| Pain | 1,299,217 | 1919 |
| British Pat. | 126,664 | 1919 |
| French Pat. | 492,584 | 1919 |
| French Pat. | 494,610 | 1919 |
| Austrian Pat. | 79,379 | 1919 |
| German Pat. | 305,096 | 1920 |
| Driggs | 1,417,460 | 1922 |
| Paulus et al. | 1,641,549 | 1927 |
| Driggs et al. | 1,712,383 | 1929 |
| Driggs et al. | 1,782,292 | 1930 |
| Stetson | 1,803,366 | 1931 |
| Brandt | 1,879,840 | 1932 |
| Brandt | 1,890,175 | 1932 |
| Driggs et al. | 1,947,834 | 1934 |
| Skinner | 1,994,490 | 1935 |
| German Pat. | 611,843 | 1935 |
| Fischer | 2,120,246 | 1938 |
| Weinert | 2,271,280 | 1942 (filed 1935) |
| Decker | 2,269,582 | 1942 (filed 1938) |

The pertinent sections of the patent statutes (35 U.S.C.) provide:

§ 102. Conditions for patentability; novelty and loss of right to patent.

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

\*　　\*　　\*　　\*　　\*　　\*

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

(f) he did not himself invent the subject matter sought to be patented, or

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

§ 103. Conditions for patentability; non-obvious subject matter.

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

It is defendant's contention that the invention defined by claims 1–4 and 7 of the '114 patent are invalid under § 103 of the patent statute as having been obvious at the time the invention was made to one having ordinary skill in the art. Specific reliance has been placed upon the teachings of the Driggs et al. patent 1,947,834 when combined with the British patent 2,826 and with the Skinner patent 1,994,490. It is asserted that claim 6 is fully anticipated by the Driggs '834 patent alone, and that it is invalid in accordance with the provisions of § 102 of the patent statute. The Driggs '834 patent discloses a signal having as a payload a flare-parachute combination contained within a cartridge which is fired to its operating height by the force of the firing charge only. The Driggs '834 patent disclosure is not a rocket device. It *has no major propelling charge* and would be unable to reach the altitude of the patented signal construction. Defendant has erroneously asserted that a small charge employed by Driggs to release the flare-parachute combination is equivalent to the major propelling charge of the '114 signal; the two charges compared would in no way accomplish the same result. The major propelling charge of the '114 structure provides the forward thrust to propel it to a high altitude whereas the forward thrust provided by the expelling charge of the Driggs flare is negligible. The '114 rocket construction contains adjacent the upper end of the major propelling charge an expelling charge for releasing the flare-parachute combination comparable to the expelling charge of the Driggs device. The Driggs '834 flare signal thus fails to anticipate those features of the claims of the '114 patent with which it is compared. It also follows that none of the claims of the '114 patent in suit, claims 1–4, 6, and 7, are anticipated by the Driggs '834 patent disclosure because

the other prior patents relied upon, particularly the Skinner patent and British patent 2,826, do not supply the deficiencies of the Driggs '834 patent. The British patent 2,826 is cited merely for its disclosure of vane structure allegedly equivalent to that described in claims 1–4 and 7, and would be effective as an anticipatory reference only if the Driggs '834 device and the rocket assembly of the '114 structure could be regarded as equivalents. The Skinner patent discloses a rocket projectile having a launching charge and a propelling charge which operate in a manner similar to that of the '114 rocket construction; however, the Skinner device is designed to be fired from a mortar and varies substantially structurally and in function and result from that of the '114 construction.

The combination of the teachings of the prior patents cited by defendant, particularly the Driggs '834, Skinner, and British 2,826 patents, may *now* make the construction of the patented device appear obvious; however, obviousness is always more easily conceived after the event than is the solution while the problem remains unsolved. See Brown v. Brock, 240 F.2d 723 (4th Cir. 1957). See also Zonolite Co. v. United States, 149 F.Supp. 953, 138 Ct.Cl. 114 (1957). Numerous rocket constructions and flare signals had been developed in the past, but no one had satisfied the need for a rocket signal capable of being hand fired and yet reaching high altitudes until Anzalone disclosed the '114 patent construction.

■ It is concluded that it would not have been obvious at the time the '114 invention was made to have combined the mortar-fired rocket projectile of Skinner with the flare signal of Driggs '834 and the wing structure of the British patent 2,826, or to combine any other group of prior patents cited by defendant to produce the hand launched rocket construction disclosed and claimed in the '114 patent. The '114 patent claims in suit are found to be valid.

■ Defendant has alleged that claim 6 and 7 of the '114 patent are invalid (apparently under § 102(f) and/or (g) of the patent statute quoted above) because the subject matter described therein was first invented by another, one Guy E. Giroux, Jr. In support of this allegation, defendant has relied solely on the fact that these two claims were presented to the Patent Office in an application submitted by said Giroux prior to the filing of the '114 patent application. The record shows that '114 patent claims 6 and 7 in the identical form in which they now appear were transferred from the earlier filed Giroux application to the '114 patent application; both applications at the time of the transfer were owned by the same assignee corporation. The fact the two claims first appeared in an earlier application is not in itself conclusive proof of the inventorship of the subject matter described therein. The original Anzalone application contained claims which the original disclosure fully supported broad enough to encompass the subject matter of '114 patent claims 6 and 7, and the inventor later submitted an oath which had the effect of reaffirming his inventorship of the subject matter disclosed and claimed in the '114 application. There is also evidence of record to the effect that Anzalone had disclosed his invention to another prior to the filing date of the Giroux application, and it is just as reasonable under the circumstances attendant this case to conclude that Anzalone was the prior inventor. It is also noted that there is no indication Giroux has ever contested the inventorship of the '114 invention. Defendant has cited the case of United Chromium, Inc. v. General Motors Corp., 85 F.2d 577 (2d Cir. 1936), cert. denied, 300 U.S. 674, 57 S.Ct. 613, 81 L.Ed. 879 (1937), in which a patent was invalidated because the original inventor (not the patentee), who had filed an application for a patent on his invention and whose company had been purchased by the patentee's company, subsequently filed a concession of priority to the patentee *under protest*. The facts of that case clearly distinguish it from the situation at hand. As noted above, there is no evidence of record to

the effect Giroux contested the award of priority and no facts have been adduced to show that he was the prior inventor other than the fact his filing date preceded that of Anzalone's by approximately seven weeks, a fact which standing alone is inconclusive. Defendant has failed to overcome the presumption of validity which attaches to the '114 patent claims 6 and 7, and Anzalone must be regarded as the first inventor of these claims.

■■ With regard to the '123 patent, defendant has urged that none of the claims of the '123 patent in suit are infringed because of limitations made therein during the prosecution of the '123 patent application before the Patent Office, which limitations narrow the scope of the claims to the extent they do not encompass the allegedly corresponding structural features of the accused T–73 Signal. The claims in suit are all directed to the arrangement of the outer container within which the rocket assembly is contained. The T–73 has a complete and separable outer container which encloses the entire rocket assembly *including a firing cap* which is fitted on the end opposite from the primer of the rocket and is designed to be removed and placed in firing position when one desires to launch the rocket. Plaintiff has contended that all of the claims in suit are sufficiently broad to be interpreted to include as part of the outer container the internally contained firing cap of the T–73. Under ordinary circumstances, plaintiff's argument would probably be meritorious since the differences between the accused device and the structure defined by the claims in suit are rather narrow. However, these differences become significant when the prosecution history before the U.S. Patent Office is reviewed. The record shows that in order to obtain the allowance of each of the '123 claims in suit, the applicants limited the claims to a construction in which the outermost casing included the separable firing cap as an integral part thereof. This was necessary in order to avoid the Patent Office examiner's rejections based on

prior art and based on the fact that otherwise the applicants were claiming a "casing for a casing." Having thus *purposely* limited the claims to a construction in which the firing cap forms an integral part of the outer container, the plaintiff is now estopped to expand the scope of the claims to recoup that which has been surrendered by asserting that the claims can be interpreted to include the internally contained and completely covered firing cap of the accused structure. It is well settled that patent claims are interpreted in light of the prosecution history, and that where the applicant has narrowed his claims in order to obtain the allowance thereof, the limitations recited or argued cannot be disregarded in an infringement action. See Powder Power Tool Corp. v. Powder Actuated Tool Co., Inc., 230 F.2d 409, 415, (7th Cir. 1956). A similar situation to the one confronted here was presented in Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1942), wherein a patentee had amended his claims which originally provided for a conductor means "carried" by a gaming table to recite a conductor means "embedded" in the table. The court held:

\* \* \* the applicant restricted his claim to those combinations in which the conductor means, though carried on the table, is also embedded in it. By the amendment, he recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference. \* \* \*

\* \* \* \* \* \*

\* \* \* The difference which he thus disclaimed must be regarded as material, and since the amendment operates as a disclaimer of that difference it must be strictly construed against him. \* \* \* As the question is one of construction of the claim it is immaterial whether the examiner was right or wrong in rejecting the claim as filed. \* \* \*

The rule announced in the *Exhibit* case is applicable here. The applicants clearly restricted their claims to an embodiment

in which the firing cap constitutes part of the outer casing rather than being in addition thereto. The doctrine of equivalents cannot be invoked to regain that which has been in effect disclaimed.

The '123 patent claims in suit recite a rocket signal having a complete outer cover, including a removable firing member which in its inoperative position is placed at the opposite end from the primer of the rocket and forms an integral part of a complete separable outer enclosure for a rocket assembly. The rocket motor assembly contained within the outer enclosure is recited in the claims, but is not part of the alleged invention.

Defendant, in challenging the validity of the '123 patent claims in suit has referred to 15 prior art references,[2] of which the Pfeil patent 995,174, Hammell et al. patent 2,436,751, and Decker patent 2,120,736 are considered most pertinent. The Pfeil patent discloses a pyrotechnic device, a fusee, having a complete outer casing, said casing having as an integral part thereof a separable plug member which in the inoperative position is positioned opposite the firing end of the fusee. The plug member has a "button" or "scratch" which when brought in contact with an ignition chemical located at the opposite end of the fusee forms a firing means which ignites the fusee. The Pfeil patent discloses all of the salient features of the '123 structure as recited in the '123 claims in suit and is anticipatory thereof. The firing means of the '123 structure and of the Pfeil patent do differ in some minor respects. The Pfeil device employs frictional contact of the scratch with an ignition chemical, whereas the '123 structure is fired by concussion. These different means of firing are fully equivalent and not patentably significant. While the internal pyrotechos components contained within the respective outer enclosures of the '123 structure and the Pfeil patent are somewhat different, these inner components, as earlier noted, were not regarded as part of the '123 invention. Furthermore, it would have been obvious to have included a rocket assembly such as is disclosed in the Decker patent within the enclosure of the Pfeil patent. The Decker patent shows a rocket assembly within an outer enclosure similar to that of the Pfeil patent.

The prior Hammell patent discloses a firing cap mounted on the primer

**2.** Defendant has urged that the '123 patent is invalid on the grounds that the invention was fully anticipated by the prior art and is invalid under 35 U.S.C. §§ 101 and 102 and that the invention was obvious to those skilled in the art at the time it was made and is invalid under 35 U.S.C. § 103. In support of these allegations of invalidity defendant has relied on the following prior art disclosures:

| U.S. patentee or foreign country | Number | Date |
|---|---|---|
| Sibley | 17,407 | 1857 |
| S. Jackson | 534,107 | 1895 |
| W. D. Jackson | 617,576 | 1899 |
| Pfeil | 995,174 | 1911 |
| Cimorosi | 1,604,547 | 1926 |
| Gammeter | 1,640,892 | 1927 |
| France | 720,584 | 1931 |
| Brandt | 1,890,175 | 1932 |
| Driggs et al. | 1,947,834 | 1934 |
| Decker | 2,120,736 | 1938 |
| McEntegart | 2,175,477 | 1939 |
| Jones | 2,421,752 | 1947 (filed 1943) |
| Hammell et al. | 2,436,751 | 1948 (filed 1945) |
| Fieser et al. | 2,501,766 | 1950 (filed 1944) |
| Naval Ordnance Laboratory Drawing No. | 344,570 | 1945 |

---

end of a signal device which is nearly identical structurally and functionally to the firing cap of the '123 structure. It would have been obvious to one having ordinary skill in the art to have placed the firing cap of the Hammell patent at the opposite end from the primer and to have it form a separable part of a complete outer enclosure in view of the disclosure of the Pfeil patent. The Hammell patent was cited by the Patent Office examiner during prosecution of the '123 patent application and this creates a presumption of validity over this reference; however, this presumption has been rebutted and is particularly weakened where, as here, it is considered in combination with art not cited by the Patent Office. The claims of the '123 patent in suit are found invalid as failing to define invention over the Pfeil patent alone or in combination with either Hammell or Decker.

Defendant has sought to avoid liability under the '242 patent solely on the ground that the claims relied upon are invalid, it being conceded that the accused Navy Day-Night Signal and the structures defined by the claims in suit are substantially the same.[3]

The '242 patent claims in suit recite a signal device including a flare signal and a smoke signal placed in spaced end-to-end relationship in a single container. It is clear that each signal is to be used separately and independently from the other one since one is a day signal and the other is for night use. The only possible cooperation between the two signals is that one acts as a handle while the other is being used. The respective individual functions of the two signals which comprise the '242 structure remain unaltered and can be used independently. The elements of the '242 device do not cooperate in any unobvious or unexpected manner. To be patentable an old combination of elements must contribute more than the sum of its parts. "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 (1938). See also Bocjl Corp. v. United States, 100 F.Supp. 600, 120 Ct.Cl. 347, 396 (1951).

3. Defendant has urged that the '242 patent is invalid on the grounds that it was fully anticipated by the prior art and is invalid under 35 U.S.C. §§ 101 and 102, and that the invention was obvious to those skilled in the art at the time it was made and invalid under 35 U.S.C. § 103, and is further invalid because the claims in suit recite an aggregation. In support of its allegation that the '242 patent was anticipated by the prior art, defendant has relied on the following patents:

| U.S. patentee or foreign country | Number | Date |
| --- | --- | --- |
| Miller et al. | 1,273,260 | 1918 |
| Holt | 1,360,527 | 1920 |
| Wanklyn | 1,367,903 | 1921 |
| Wanklyn | 1,381,371 | 1921 |
| French | 542,964 | 1922 |
| Paulus et al. | 1,641,549 | 1927 |
| Mulcahy | 1,773,197 | 1930 |
| Hitt | 2,006,271 | 1935 |
| Eroe | 2,170,815 | 1939 |
| Le Comte | 2,328,916 | 1943 |
| MacMillan | 2,398,545 | 1946 (filed 1941) |
| Van Karner | 2,476,125 | 1949 (filed 1944) |
| Dwyer | 2,481,987 | 1949 (filed 1944) |

Plaintiff has contended that the arrangement of the elements in the '242 structure is such that the '242 device can be held in the hand while in use constituted a patentable advancement in the art. The arrangement of the '242 signals in such a manner that one along with its outer casing can be used as a handle during the burning of the other may be convenient, but it does not supply the co-action necessary to permit a finding the '242 device was patentable. The situation presented here is similar to that in the case of Reckendorfer v. Faber, 92 U.S. 347, 356, 23 L.Ed. 719 (1875), wherein the U.S. Supreme Court found the combination of a pencil and eraser to be an unpatentable aggregation even though it provided a highly convenient device. The Court observed:

This combination consists only of the application of a piece of rubber to one end of the same piece of wood which makes a lead-pencil. It is as if a patent should be granted for an article, or a manufacture as the patentee prefers to term it, consisting of a stick twelve inches long, on one end of which is an ordinary hammer, and on the other end is a screw-driver or a tack-drawer, or, what you will see in use in every retail shop, a lead-pencil, on one end of which is a steel pen. * * * In all these cases there might be the advantage of carrying about one instrument instead of two, or of avoiding the liability to loss or misplacing of separate tools. *The instruments placed upon the same rod might be more convenient for use than when used separately. Each, however, continues to perform its own duty, and nothing else.* No effect is produced, no result follows, from the joint use of the two. * * * The law requires more than a change of form * * * or of the order in which they are used, to give patentability. * * * (Emphasis added.)

The doctrine of the *Reckendorfer* case, supra, was applied in a more recent case, Application of Krivanek, 225 F.2d 483, 42 CCPA 1101 (1955) in which an elongated surgical tool designed for the removal of metal fragments from wounds and having a flexible filament in the form of a snare at one end and a magnet at the other was found unpatentable, even though it also was a convenient combination. The court stated:

While we readily agree that the instant device might provide more efficient and speedier means over separate magnet and loop devices, it does not necessarily follow that such a combination is patentable.

All of the claims of the '242 patent in suit, claims 1, 2, 7, and 8 recite an aggregation of elements and are invalid.

The '242 claims in suit are also found to be invalid as failing to define an invention over the combination of prior patents issued to Le Comte, 2,328,916, Van Karner, 2,476,125, Miller et al., 1,273,260, and Holt, 1,360,527. The Le Comte patent discloses a signal which is substantially the same structurally as either of the two individual signals of the '242 device with the possible exception of the arrangement of the cover member and ignition assembly. The Van Karner and Miller patents disclose pyrotechnic devices having cover member and ignition assembly arrangements equivalent to those employed in the '242 signals. The Van Karner patent is also in most other respects similar to either of the '242 signals which comprise the '242 device. The Holt patent shows two flare signals placed in a tubular container and spaced apart by insulation means. It would not have involved patentable invention to place the cover member-ignition assembly arrangements disclosed in either the Van Karner or Miller patents on the Le Comte signal and enclose two such structures formed thereby in a single container with insulation means therebetween as disclosed in the Holt patent.

It is recommended that the court find that the claims in suit of the '114 patent are valid and infringed, that the claims in suit of the '123 patent are not infringed and are invalid, and that the claims in suit of the '242 patent are invalid.