SANTA ANITA MFG. CORP., a California corporation, Appellant,

v.

Max J. LUGASH and Maxon Industries, Inc., a California corporation, Appellees.

Max J. LUGASH and Maxon Industries, Inc., a California corporation, Cross-Appellants,

v.

SANTA ANITA MFG. CORP., a California corporation, Cross-Appellee.

No. 20267.

United States Court of Appeals
Ninth Circuit.

Dec. 6, 1966.

As Modified on Denial of Rehearing
April 6, 1967.

C. A. Miketta, William Poms, Guy Porter Smith, of Miketta, Glenny, Poms & Smith, Los Angeles, Cal., for appellants and cross-appellees.

Robert W. Fulwider, Frederick E. Mueller, of Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., for appellees and cross-appellants.

Before BARNES and KOELSCH, Circuit Judges, and THOMPSON, District Judge.

BARNES, Circuit Judge:

This case deals with two patents. The United States District Court for the Southern District of California, Central Division, had jurisdiction under 28 U.S.C. §§ 1338(a) and 2201. This court has jurisdiction under 28 U.S.C. § 1291.

Appellee Max J. Lugash is an employee of appellee Maxon Industries, Inc. (hereinafter "Maxon"). Patents Nos. 2,837,- 227 and 2,989,196 were issued to him and assigned to Maxon.[1] Appellees brought suit against appellant Santa Anita Manufacturing Corporation (hereinafter "Santa Anita") charging infringement of these patents.

This case concerns what are broadly designated as load elevators for trucks. Since the bed of a truck is higher than the surface of the ground, some means must be available to get the load from the ground up to the bed of the truck. For light objects, of course, the driver of the truck merely lifts them by hand. Many loads, however, are so heavy that manual effort is either unable to lift the load or able to do so only with extreme exertion. Industry has taken two forms of approach to the problem. First, there is the loading dock, where the floor level is at approximately the same height from the ground as the truck bed, so that when the truck backs up to the dock there is little or no difference between the surface of the dock and the truck bed. The second approach is to provide some kind of mechnical device to elevate the load from ground level to the level of the truck bed. An example of this might be a fork-lift truck raising or lowering pallets of merchandise to and from the truck. Within the genus of mechanical devices for elevating loads from the ground to the level of the truck bed are the devices which are attached to the truck. Such a device includes a platform, on which the load is placed to be elevated, which is about as long as the truck is wide, and which has a width of about two feet. The platform is attached to a framework under the bed of the truck and connected to a power source. Due to the linkage with the frame, the platform, adjacent to the rear of the bed of the truck, remains horizontal as it is raised or lowered, providing an efficient and convenient system for raising or lowering heavy objects. The discussion thus far has been merely for description and none of the above elements or functions are in issue here.

The question to which the patents here involved are addressed deals with what is to be done with the platform when not in use. What the parties have conceded to be prior art utilized the platform as a tail gate. That is, the platform would be rotated to a vertical position, acting as a gate or barricade on the rear of the truck preventing merchandise from falling out. This tail gate form of load elevator, however, had the disadvantage of being in the way when a loading dock was being used. This is because when loading from a dock the loader would not be used, yet somehow it had to be lowered to permit loading. This problem was overcome by an idea which was included as an element of the patents in issue.

Lugash '227 teaches a mechanism which embodies all of the elements of the loaders mentioned above. However, it is designed so that the platform, after use, can be manually rotated from the horizontal position until it rests on the frame of the device under the bed of the truck. Thus it does not form a tail gate, nor does it interfere with dock loading. Maxon manufactures this device as "Tuk-a-Way" loaders. Santa Anita makes what is, to all intents and purposes, the

---

1. The patents will be referred to as '227 and '196 respectively.

same device, though branding it as their "Folda-Lift" loader. Maxon brought suit for infringement of '227 and '196, and Santa Anita counterclaimed for a declaratory judgment of invalidity of the patents involved.[2] Santa Anita amended its answer to include a claim for false marking. The trial court found '227 valid and infringed and that the mismarking was innocent, from which findings Santa Anita appeals. The court found '196 invalid for obviousness, and Maxon has cross-appealed.

■■ At the outset we must consider the dimension of our function as a reviewing court. We are not a trial court, and will not weigh the evidence de novo to arrive at new findings. Our power is limited to performing the function assigned to us by Rule 52(a) of the Federal Rules of Civil Procedure. Only if the findings of the court below are clearly erroneous can we set them aside.

Though we have been favored by extensive briefs by counsel, the issue for us is a narrow one. Cognizant of the hazards of oversimplification, we try to formulate the problem presented. Lugash '227 is a combination of two known elements, a parallel linkage system (taught by the previous Novotney Patent No. 2,194,403 issued in 1940) and an invertible platform (taught, e. g., by the previous Narvestad Patent No. 2,680,529 of 1954). Basically the issue is: Under what circumstances is a combination of known elements patentable as an invention?

■ The monopoly of a patent is granted only when the statutory requirements of patentability have been met. Where the subject matter of the patent would have been obvious to one skilled in the art at the time of the invention, no patent can be issued. 35 U.S.C. § 103. With regard to the particular situation of combinations of old ideas, the courts have clearly stated the law.

"The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Lincoln Eng'r Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 (1938) (footnote omitted).[3]

See also, Dwyer v. United States, 357 F. 2d 978 (Ct.Cl.1966).

In Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), a finding of patentability was reversed because "neither court below has made any finding that old elements which made up this device perform any additional or different function in the combination than they performed out of it." 340 U.S. at 152, 71 S.Ct. at 130.

In this circuit we have consistently followed this rule.

"It follows that though a device may be new and useful it is not patentable if it consists of no more than a combination of ideas which are drawn from the existing fund of public knowledge, and which produces results that would be expected by one skilled in the art." Griffith Rubber Mills v. Hoffar, 313 F.2d 1, 3 (9th Cir. 1963) (footnote omitted).

See also, Continental Connector Corp. v. Houston Fearless Corp., 350 F.2d 183 (9th Cir. 1965), Coast Metals, Inc. v. Wall Colmonoy Corp., 315 F.2d 416 (9th Cir. 1963).

In Bentley v. Sunset House Dist. Co., 359 F.2d 140, 144 (9th Cir. 1966), we said:

"In assessing the patentability of combination patents, we are to apply a 'severe test,' whether 'the whole in some way exceeds the sum of its parts' to produce 'unusual or surprising con-

2. Lugash '196 is an improvement patent including the '227 device, but providing for unitary construction.

3. The Supreme Court has indicated that this definition is as precise as the sub-

ject permits. Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 151, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

sequences from the unification of the elements * * *,' Great A. & P. Tea Co. v. Supermarket Equipment Co., 1950, 340 U.S. 147, at 152, 71 S.Ct. 127, at 130, 95 L.Ed. 162."

██ It is apparent from the record and findings that the trial court tested patentability by the requirements of 35 U.S.C. § 103, the test of obviousness. (E. g., Findings of Fact Nos. 18, 25 and 28, C.T. 666–69.) Unquestionably these statutory requirements are prerequisite to the issuance of any patent. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). But in the special case of combination patents, the "severe test", referred to in Bentley v. Sunset House Dist. Co., supra, must be applied and satisfied before a combination patent can be recognized. Zero Mfg. Co., Inc. v. Mississippi Milk Producers Ass'n, 358 F.2d 853 (5th Cir. 1966); Jeddeloh Bros. Sweed Mills, Inc. v. Coe Mfg. Co., (9th Cir.) No. 20662, decided March 3, 1967. The record in only one place reflects the application of this test to the patent in issue, which is admittedly a combination of old ideas. (Appellees' Brf., p. 51.)

Finding of Fact No. 8 is the only reference to a new function of the Lugash '227 loader. It is obvious from the authorities cited above that the test of a new function must be met or the patent is invalid. Therefore, in this case, logic dictates that if Finding of Fact No. 8 was clearly erroneous, then the judgment must be reversed. We believe we are required to hold that Finding of Fact No. 8 was clearly erroneous.

Finding of Fact No. 8:

"Lugash Patent '227 creates a new organization of individually old elements giving new modes of operation to the elements of the combination,

never before seen in the truck-loading art. *For the first time,* the power means moves a load platform into and out of a stored position. *For the first time,* the lifting arms of a truck loader function to move an inverted platform into and out of a stored position. *For the first time,* both the power means and the lifting arms of a truck loader are given a dual function, i. e., they are active elements in accomplishing movement of the inverted platform into and out of a stowed position as well as being active in carrying out loading operations.

"Truck loaders embodying the inventions of Lugash '227 were the first loaders that could be stored in an out-of-the-way position ever to come into successful use in the trucking industry." (C.T. 664, emphasis added.)

The emphasized portions precede the supposed and only new function: *mechanical power to move the platform into the stored position.*[4] Appellant states that the inversion of the platform is done manually. (Appellant's Opening Brief, p. 6.) Appellees admit the same. (Appellees' Brief p. 6, lines 11–13.) The court found as a fact that the inversion was manual. (Finding of Fact No. 6, C.T. 663–64.)

Invertible platforms were not unknown to previous loader components. Novotney showed a folding or inverted platform. The court found this inversion was "mechanically possible" (Finding No. 16) but not "inherent" (Finding No. 17) in Novotney. We think if "mechanically possible" it is disclosed by prior art.

Finding of Fact No. 8 is not erroneous in its conclusion that Maxon's Tuk-a-Way loader is capable of moving up and down while the platform is in the inverted posi-

---

4. The '227 file history discloses that original claims 1 to 3 and 5 to 9, inclusive, were rejected—"a tail gate elevator platform having parallelogram links and cable means to elevate the platform with its load while keeping it in its level position." (Exh. A, p. 17.)

Appellee then urged before the patent office, as its secondary object, that the '227 platform can be manually moved or folded back on hinge bolts 48 at the discretion of the operator into an inverted out-of-the-way position (beneath the truck bed) when not in use. (Exh. A, original claim 10.)

tion. The error lies in the "for the first time" element. This "for the first time" element apparently is a result of the later Finding of Fact No. 21:

> "Narvestad '529, Peters '577 and Jester '243 do not disclose or suggest any means for utilizing the power means for effecting movement of an inverted platform into and out of a stowed-away position." (C.T. 667.)

Though there is a strong suggestion that this is contrary to the evidence (e. g., T. R. 800–801), we need not decide whether this finding is erroneous because it is not conclusive. An examination of the Novotney patent (1940) clearly shows that the only possible way to raise or lower the lifting arms, whether the platform is extended or inverted, is with the power means. The only conclusion we can reach is that the use of a power means to elevate the lifting arms, *whether the platform is inverted or extended,* is neither an innovation nor a new function unique to Lugash '227.

■ We therefore conclude that the Lugash '227 patent has not been shown to perform a new or unexpected function in light of the prior art. Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., supra, dictates that the patent is therefore invalid.

■■ As to the Lugash '196 second or improvement patent, we uphold the trial court's finding that the concept of unitary construction was prior art. (Finding of Fact No. 33, C.T. 671.) Apparently Maxon agrees. (Opening Brief of Cross-Appellants, p. 19.) We have found that the elements of Lugash '227 are within the public domain. As discussed above, the addition of another element of prior art cannot make the device patentable unless it then performs a new or surprising function. No such function has been shown for Lugash '196.

■ The district court was correct in finding Maxon and Lugash not guilty of false marking under 35 U.S.C. § 292. Certain of Maxon's Tuk-a-Way loaders bore both patent numbers (Lugash '227 and Lugash '196), although some were not of the unitary construction specified by Lugash '196. The district court found no intent to deceive the public. We do not reach the question of intent. The label indicated patents, not only patent pending or applied for. Also, the marking was not done "without the consent of the patentee," nor was it done to "any unpatented article." The actions of the appellees, regardless of intention, have not met the requirements of the statute.

The judgment is reversed, and the case is remanded with instructions to dismiss the action for infringement and the counterclaim for false marking, and to enter the declaratory judgment of invalidity of Patent Nos. 2,837,227 and 2,989,196.