**INSTA–FOAM PRODUCTS, INC.,**
Plaintiff–Appellee,

v.

**UNIVERSAL FOAM SYSTEMS, INC.,**
Defendant–Appellant.

No. 89–1142.

United States Court of Appeals,
Federal Circuit.

June 26, 1990.

Rehearing Denied Aug. 27, 1990.

---

James T. Fitzgibbon, of Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., argued, for plaintiff-appellee. With him on the brief was Angelo J. Bufalino.

Donald R. Dunner, of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued, for defendant-appellant. With him on the brief was Robert J. Gaybrick.

Before ARCHER and MAYER, Circuit Judges, and SKELTON, Senior Circuit Judge.

ARCHER, Circuit Judge.

Universal Foam Systems, Inc. (Universal) appeals from the Order of the United States District Court for the Eastern District of Wisconsin, No. 83–C–1952, entered August 19, 1988, holding it liable for infringement of claims 1–12 of reexamined U.S. Patent No. 3,784,110. We affirm.

### Background

U.S. Patent No. 3,784,110 (the '110 patent), entitled "Mixing and Dispensing Gun Having a Replaceable Nozzle," was issued January 8, 1974 to William R. Brooks and is currently assigned to Insta–Foam Products, Inc. (Insta–Foam). In December of 1983, Insta–Foam filed suit against Universal for infringement of the '110 patent.

Following the institution of the infringement suit and on the belief that there was a substantial new question as to the patentability of the '110 claims, Universal requested that the Commissioner of Patents reexamine the '110 patent. When the Commissioner granted Universal's request, the district court stayed the infringement suit pending the outcome of the reexamination proceeding.

Reexamination Certificate B1 3,784,110, issued by the Commissioner on December 4, 1984, confirmed the patentability of claim 4 of the '110 patent without amendment, incorporated into the patent amended claims 1–3 and 5 and added additional claims 6–12. The district court proceeding was then resumed, and resulted in a Decision and Order by the court holding that none of the claims of the '110 patent as modified by the Reexamination Certificate was invalid or unenforceable, and that all of the claims were infringed by Universal. *Insta–Foam Prods., Inc. v. Universal Foam Sys., Inc.*, No. 83–C–1952 (E.D.Wis. May 29, 1986). In so doing, the court rejected Universal's defensive claim under 35 U.S.C. § 307 (1988) that it had acquired intervening rights attendant to the reexamination of the '110 patent. *Id.*, slip op. at 11.

Universal appealed and this court, in an unpublished opinion, affirmed the district court's judgment with respect to invalidity, but vacated and remanded on the infringement and enforceability issues. *Insta–Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 829 F.2d 43 (Fed.Cir.1987).

On remand, the district court reconsidered the infringement and enforceability issues, entered supplemental findings and reaffirmed its previous decision that the reexamined '110 patent was not unenforceable and was infringed by Universal. *Insta–Foam Prods., Inc. v. Universal Foam Sys., Inc.*, No. 83–C–1952 (E.D.Wis. August 19, 1988). On motion by Insta–Foam, the district court later made supplemental findings with respect to Universal's intervening rights defense. *Insta–Foam Prods., Inc. v. Universal Foam Sys., Inc.*, No. 83–C–1952 (E.D.Wis. October 26, 1988).

Universal now appeals from the district court's Order contending (1) that its foam gun does not infringe, either literally or under the doctrine of equivalents, any of the claims of the reexamined '110 patent and (2) that it acquired intervening rights with respect to claims 1–3 and 5–12, which claims were either amended or newly presented by Insta–Foam during the reexamination, *see* 35 U.S.C. § 307.

For the reasons given below, we affirm the district court's decision that Universal's gun infringes claim 4 of the '110 patent under the doctrine of equivalents and therefore need not reach the other issues, including the sufficiency of Universal's intervening rights defense, raised in this appeal.

## Discussion

Claim 4 of the '110 patent, an independent claim, defines several elements of the covered invention in "means plus function" format as permitted by 35 U.S.C. § 112, 6th para. (1988). Claim 4 recites, in pertinent part:

4. In a dispensing gun for mixing and discharging multi-component fluids, the gun comprising ... plunger means connected to the trigger means for unseating the ball means and permitting fluid flow when the ball means is unseated, biasing means urging the plunger means away from the ball means thereby permitting the ball means to be normally seated on the valve seat means and the valve means to be normally closed, ... said biasing means engaging the housing means and the trigger means and normally urging the trigger means into an inoperative position, thereby pulling the connected plunger means away from the ball means and permitting the ball means to be normally seated with a fluid-tight seal on the valve seat means.

In connection with its literal infringement analysis, the district court made the following findings concerning claim 4 and Universal's accused gun:

44. Claim 4 calls for the "plunger means" to be "connected to the trigger means for unseating the ball means...."

In the Universal gun, the function of the plunger is identical, *i.e.*, it unseats the ball means. In order to perform the function of unseating the ball means, the plunger must be moved. The plunger and the ball move together for this purpose. The plunger in turn is directly contacted by and moved to the exact extent that the trigger is moved. Hence, the plunger is connected in use to the trigger. In Universal's gun, the ball means and the plunger are physically attached and always move together when the gun is used; in the '110 patent, the trigger and the plunger are shown as being attached so as to move together, and the ball moves when the gun is used. In both constructions, therefore, all three components—the trigger, the plunger, and the ball—must move together during operation. The fact that the parts are or are not separable *when not* function*ing* is immaterial. The claim language "connected to" refers to a function, *i.e.*, a connection "in use" for "unseating" the ball. [Emphasis in original.]

45. In the Universal gun, the function of "urging the plunger means ... [to permit] the ball means to be seated on the valve seat means and the valve to be normally closed ..." is identically present. Universal's springs urge the plunger means and the attached ball means in such a way that the ball means becomes seated on the valve seat means, and the valve means are normally closed.

46. The only difference between the structure defined in plaintiff's claim 4 and the Universal gun is that plaintiff's plunger and ball are separable, while Universal's trigger and plunger are separable. Because the function is the same, it is immaterial whether Universal's plunger literally separates from the ball after the ball is seated. These are structurally equivalent because they function the same way.

47. In the Universal gun, the biasing means (the springs) clearly has the identical claimed function of "normally urging the trigger means into an inoperative position thereby pulling the connected plunger means away from the ball means

and permitting the ball means to be normally seated with a fluid-tight seal on the valve seat means."

48. Universal's springs are positioned with one end against the housing and the other end engaging the plunger. The plunger is actuated by and moves with the trigger, so that the "biasing means" engages the "trigger means" and the "housing means" to urge the trigger means to an inoperative position.

49. Likewise, the language "pulling the connected plunger means away from the ball means" is also functional and signifies pulling the plunger means in a direction away from the ball means; the functional language "permitting the ball means to be normally seated with a fluid-tight seal on the valve seat means" is identically met by the Universal gun.

*Insta–Foam Prods., Inc. v. Universal Foam Sys., Inc.*, No. 83–C–1952, slip op. at 12–14 (E.D.Wis. August 19, 1988).

With respect to infringement under the doctrine of equivalents, the court additionally found:

51. Even if there is no literal infringement of claim 4, I find that the Universal gun unquestionably infringes claim 4 of the '110 patent under the doctrine of equivalents. *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

52. The Universal gun performs substantially the same overall function in substantially the same way to obtain substantially the same result as the claimed invention. The only differences [sic] in the Universal gun and claim 4 of the '110 patent is the form of connection between three parts, *i.e.*, the trigger, the ball, and the plunger, all of which cooperate in use by moving together to operate the gun valves. Claim 4 does not require these parts to be physically connected in the identical manner as is shown in the '110 specification.

*Id.* at 14.

Universal challenges the district court's finding that its gun infringes claim 4 of the '110 patent under the doctrine of equivalents on three bases: (1) that the evidence

does not support the court's finding that Universal's gun operates in substantially the same way as the claimed invention; (2) that, in any event, infringement under the doctrine of equivalents is precluded by prosecution history estoppel; and (3) that its gun practices an invention disclosed in the prior art, *i.e.*, the Johnson patent, U.S. patent 3,330,484.

 Infringement under the doctrine of equivalents is an equitable doctrine devised for "situations where there is no literal infringement but [where] liability is nevertheless appropriate to prevent what is in essence a pirating of the patentee's invention." *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870, 228 USPQ 90, 96 (Fed. Cir.1985). Infringement *may* be found under the doctrine of equivalents if an accused product "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (*in banc*), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

 The determination of whether an accused device is the equivalent of a claimed invention is a question of fact reviewed by this court under the clearly erroneous standard. *See Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co.*, 339 U.S. 605, 609–10, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950); *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1110, 2 USPQ2d 1826, 1833 (Fed.Cir.1987).

The sole basis on which Universal challenges the district court's finding that the claimed invention and the accused device are equivalent concerns the "substantially the same way" prong of the three-part test for equivalency. According to Universal, the district court finding is clearly erroneous because "the structural differences between Universal's foam gun and claim 4

are crucial to the successful operation of the Universal foam gun, and that if the trigger, plungers, and springs of Universal's foam gun were constructed and operated in a manner substantially the same as that recited in claim 4, Universal's gun would be inoperative for *its* intended purpose." (Emphasis added).

 The above emphasized portion of Universal's argument serves to highlight the erroneous assumption on which its argument is based. It is the limitations and functions of the invention described in the claims, not the elements or functions of the accused device, which establish the reference point for the doctrine of equivalents analysis. *See generally Pennwalt Corp. v. Durand–Wayland Inc.*, 833 F.2d 931, 4 USPQ2d 1737 (Fed.Cir.1987) (*in banc*). Thus, infringement under the doctrine of equivalents is not precluded merely because the accused device performs functions in addition to those performed by the claimed device. It is sufficient that the accused device performs substantially the same functions in substantially the same way to achieve substantially the same result as does the claimed invention. *See Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1057, 5 USPQ2d 1434, 1444 (Fed.Cir.1988) ("Adding features to an accused device will not result in noninfringement if all the limitations in the claims, or equivalents thereof, are present in the accused device."); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482, 221 USPQ 649, 653 (Fed.Cir.), *cert. denied*, 469 U.S. 924, 224 USPQ 616 (1984).

 In the present case, claim 4, as opposed to other of the reexamined '110 claims, contains no limitation relating to the interchangeable or removable nature of the nozzle means.[1] Therefore, it is of no moment that Universal's gun additionally has a removable nozzle. The addition of this feature does not prove that the district court clearly erred in finding that Univer-

---

1. This contrast is evinced by comparing language of claim 4, which recites that the nozzle means is "affixed to the housing means," with independent claims 1, 5, 6 and 10 of the reexamined patent, which define the nozzle means as either "detachable" or "removable." In addition, unlike claims 1 and 6, claim 4 is not limited to a device having a "latch means ... for selectively retaining the detachable nozzle means."

sal's foam gun is an equivalent to the device defined by claim 4 of the '110 patent.

 Universal also contends that the district court erroneously applied prosecution history estoppel. Universal argues that Insta–Foam should be estopped from claiming a range of equivalents which would cover the accused device because it surrendered that subject matter in order to gain allowance of claim 4 over the Johnson patent.

Whenever prosecution history estoppel is invoked as a limitation to infringement under the doctrine of equivalents, "a close examination must be made as to, not only what was surrendered, but also the reason for such a surrender," *Bayer Aktiengesellschaft v. Duphar Int'l Research*, 738 F.2d 1237, 1243, 222 USPQ 649, 653 (Fed. Cir.1984). "Amendments may be of different types and may serve different functions. Depending on the nature and purpose of an amendment it may have a limiting effect within a spectrum ranging from great to small to zero." *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1363, 219 USPQ 473, 481 (Fed.Cir.1983).

As found by the district court, claim 9 of the patent application which ultimately matured into the '110 patent (application claim 9) was initially rejected by the patent examiner under 35 U.S.C. § 102 (1988) over the Johnson patent. To overcome the rejection, the patent applicant (now patentee) amended application claim 9 by incorporating the language of application claim 13 (which was dependent on application claim 9 and had been denoted by the examiner as being patentable over the prior art) into claim 9. The added language is as follows:

said biasing means engaging the housing means and the trigger means and normally urging the trigger means into an

inoperative position, thereby pulling the connected plunger means away from the ball means and permitting the ball means to be normally seated on the valve seat means[.]

Following this amendment, the examiner passed the application to issue, allowing each of the remaining claims. Upon issuance of the '110 patent, application claim 9, including the language added from application claim 13, was renumbered as claim 4.

Under these circumstances, Universal's argument that the district court should have estopped Insta–Foam from claiming infringement under the doctrine of equivalents is not persuasive. During prosecution, the patent applicant chose to avoid the import of the examiner's rejection by, in effect, rewriting unrejected application claim 13 in an independent form and by making each of the other pending claims dependent thereon.[2] Because the applicant did not comment on the merits of the examiner's rejection, there are no arguments or concessions which could be a basis for estopping Insta–Foam from obtaining the recovery it seeks. Neither does the patentee's abandonment of original application claim 9 form a basis for prosecution history estoppel. The abandoned claim was rejected by the examiner under 35 U.S.C. § 102 (1988) over the Johnson patent, which as Universal admits does not disclose an assembly wherein the trigger and plunger means are physically "connected." For the reason that the allowed claim contains the same limitation regarding the connection between the trigger and plunger means as did the abandoned claim, the patent applicant did not disclaim anything relating to the manner by which the plunger and trigger are connected.[3] *See generally Hughes Aircraft Co. v. U.S.*, 717 F.2d at 1362, 219

---

2. In his action rejecting claim 9 based on the Johnson patent, the examiner stated that "claim[ ] ... 13 would be allowed if written in independent form." The applicant's remarks accompanying the amendment to claim 9 were: "Claim 9 is herewith amended to include the subject matter of Claim 13 in order to present the subject matter of Claim 13 in independent form."

3. Although the amendment of application claim 9 to avoid the Johnson patent was a disclaimer of any device containing an internal biasing means, *i.e.*, one contained within the fluid passages of the handle means, this disclaimer does not preclude infringement in this case where the accused device embodies an external biasing means that is an equivalent to the biasing means defined in the claim.

USPQ at 481 (prosecution history "estoppel applies to claim amendments to overcome rejections based on prior art and to arguments submitted to obtain the patent," *citing Dwyer v. U.S.*, 174 Ct.Cl. 1064, 357 F.2d 978, 984, 149 USPQ 133, 138 (1966) and *Coleco Indus., Inc. v. United States Int'l Trade Comm'n*, 65 CCPA 105, 573 F.2d 1247, 1257, 197 USPQ 472, 480 (1978)). Accordingly, the district court's holding that "Universal cannot benefit from a prosecution history estoppel defense" is not erroneous as a matter of law.

 Lastly, we do not find persuasive Universal's argument that infringement under the doctrine of equivalents is precluded in this case because its gun practices the prior art disclosed in the Johnson patent. The doctrine of equivalents cannot, of course, be used by a patentee to extend the right to exclude others so broadly as to ensure subject matter within the public domain, *see Wilson Sporting Goods Co. v. Geoffrey and Assocs.*, 904 F.2d 677, 683–685, 14 USPQ2d 1942, 1947–1949 (Fed. Cir.1990). That truism, however, is of no avail to Universal because, in the terminology of *Wilson*, the hypothetical claim drawn to encompass Universal's gun would not have been unpatentable under 35 U.S.C. § 103 in view of the Johnson patent.

The latter would not have motivated one of ordinary skill in the art to employ an external rather than an internal biasing means. *Id.* Although Universal's gun employs a detached trigger/plunger assembly as disclosed in the Johnson patent, it employs in addition the undisclosed external biasing means.

In conclusion, we affirm the district court's decision that Universal infringed claim 4 of the '110 patent under the doctrine of equivalents. Those parts of the district court's Order dealing with literal infringement of claim 4, infringement of claims 1–3 and 5–12 both literally and under the doctrine of equivalents, and intervening rights with respect to claims 1–3 and 5–12 need not be reached.

*Costs*

Costs to Insta–Foam.

AFFIRMED.