GTE PRODUCTS CORP., et al., Plaintiffs,

v.

KENNAMETAL, INC., Defendant.

Civ. A. No. 85–0483–R.

United States District Court, W.D. Virginia, Roanoke Division.

June 13, 1991.

Michael F. Urbanski, Woods, Rogers & Hazlegrove, Roanoke, Va., David G. Conlin, George W. Neuner, Dike, Bronstein, Roberts, Cushman & Pfund, Boston, Mass., James A. Gass, GTE Services Corp., Danvers, Mass., for plaintiffs.

Gentry, Locke, Rakes & Moore, James R. Austin, Roanoke, Va., Albert L. Jeffers, Jeffers, Hoffman & Niewyk, Fort Wayne, Ind., David T. Cofer, Lawrence R. Burns, Latrobe, Pa., Ernie L. Brooks, Brooks & Kushman, Southfield, Mich., pro hac vice, for defendant.

## MEMORANDUM OPINION

KISER, District Judge.

This is a patent infringement action involving a dispute over U.S. Patent No. 4,497,520 as narrowed by reexamination certificate B1 4,497,520 (collectively the '520 patent). After a two week trial, the jury returned a verdict for the plaintiffs. The defendant now moves for a judgment notwithstanding the verdict (JNOV) on the issue of lost profits, willful infringement, the "best mode" defense, and on the issue of infringement under the doctrine of equivalents. The plaintiffs move for the imposition of a permanent injunction as well as an award of treble damages and attorney fees. The issues have been fully briefed and oral argument was heard on April 2, 1991, therefore, the matter is now ripe for disposition. For the reasons set forth below, I must deny the defendant's JNOV motions and grant the plaintiffs' motions.

## BACKGROUND

The '520 patent, issued on February 5, 1985, was invented by Randall W. Ojanen and is co-owned by plaintiffs GTE Products Corp. and GTE Valenite Corp (collectively GTE). The patent, consisting of 36 claims, discloses and claims a rotatable cutting bit of a new geometric shape. The bit consists of a head portion and a shank portion; a carbide tip is inserted in the head of the bit.

The infringement dispute centers on the carbide insert.

According to the plaintiffs, Kennametal copied and marketed the GTE rotatable cutting bit while the patent application was pending. The originally accused bits had been manufactured and sold by Kennametal since 1983. GTE notified Kennametal of its infringement in February, 1985, soon after the issuance of the patent. Kennametal contends that it relied on legal opinions from counsel during this time which indicated that the '520 patent was invalid and that Kennametal did not infringe. GTE filed this action on May 29, 1985. By the end of 1986, Kennametal had redesigned its accused tip geometry in an attempt to distance itself from the '520 patent. By the beginning of 1987, Kennametal had stopped selling the originally accused bits in favor of the bits with the redesigned tips. On May 18 of that same year, and again on February 29, 1988, Kennametal requested reexamination of the '520 patent by the Patent and Trademark Office (PTO). The PTO reexamined the patent and narrowed its scope with a 1989 reexamination certificate. Kennametal argues that after the issuance of the reexamination certificate, it received additional advice from legal counsel that the reexamined patent was still invalid and was not infringed by Kennametal's tip.

This action was tried before a jury on February 25, 1991 through March 8, 1991. During the trial, the defendant admitted that its originally accused tip infringed the '520 patent. In addition, the plaintiffs agreed to limit their claim of infringement to claims 1 and 20 of the '520 patent. The jury returned a special verdict finding that Kennametal had not literally infringed claim 1 or 20, but that it had infringed both claims under the doctrine of equivalents. The jury further found that the plaintiffs had proven lost profits in the amount of $5,300,000. On the issue of willfulness, the jury determined Kennametal had willfully infringed the patent from February 5, 1985 to March 4, 1987—the period in which Kennametal manufactured and sold the originally accused tips. In addition, the jury

found that Ojanen, the inventor, had not determined that a particular grade of carbide was best for his invention at the time of filing the patent, and therefore the patent was not invalid for failure to disclose the best mode as required by 35 U.S.C. § 112.

## DISCUSSION

### I. The JNOV Motions

In ruling on a motion for a JNOV, I must consider the record in the light most favorable to the nonmoving party. The standard to be applied is whether there is sufficient evidence that a jury could reasonably return a verdict for the nonmoving party. *Jurgens v. McKasy,* 927 F.2d 1552 (Fed.Cir. 1991); *Gill v. Rollins Protective Services Co.,* 773 F.2d 592 (4th Cir.1985); Wright & Miller, *Federal Practice and Procedure: Civil* § 2524 (1971 & 1990 Supp.). In considering the sufficiency of the evidence, I am not free to weigh the evidence or assess the credibility of the witnesses; those determinations are left to the trier of fact. *Whalen v. Roanoke County Bd. of Supervisors,* 769 F.2d 221 (4th Cir.1985); *on reh'g,* 797 F.2d 170 (4th Cir.1986). Wright & Miller, at § 2524.

■ Of the four JNOV motions, one goes to the validity of the patent, one goes to the question of whether Kennametal's tools infringed the patent, and the two remaining JNOV motions relate to the amount of damages awarded to GTE. Congress has mandated that all patents carry a presumption of validity. 35 U.S.C. § 282. Furthermore, the Federal Circuit has directed that to rebut this presumption, a party (in this case Kennametal) must prove invalidity by clear and convincing evidence. *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed.Cir.1988). By contrast, to show infringement, GTE needed only to satisfy the usual civil standard— proof by a preponderance of the evidence. However, GTE was required to present clear and convincing evidence to prevail on the question of willful infringement. *Gustafson, Inc. v. Intersystems Indus. Products, Inc.,* 897 F.2d 508, 510 (Fed.Cir.1990). At this point in the litigation, it is my job to determine, taking into account the standards set out above, whether there is substantial evidence to support the decisions reached by the jury. *RR Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1511 (Fed. Cir.1984), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

### A. The Best Mode Issue

■ For a patent application to be valid, it must include the specification, drawing and oath required by 35 U.S.C. § 111, and the specification must "set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C.A. § 112 (West 1984). When considering best mode, the law requires a two-pronged inquiry: whether, at the time of filing, the inventor knew of a mode of practicing the claimed invention that he considered better than any other and, if so, whether the disclosure was adequate to allow someone skilled in the art to practice the best mode? *Chemcast Corp. v. Arco Industries Corp.,* 913 F.2d 923 (Fed.Cir.1990).

■ Although the '520 patent discloses "a hard insert comprising a carbide material" it does not disclose a preferred carbide grade. Plaintiffs' Exhibits 1 and 2 (the '520 patent and the reexamination certificate). Therefore, the present motion turns on whether Ojanen contemplated a preferred carbide grade at the time of filing the patent application (April 29, 1983). This is manifestly a question of fact and as such I will not disturb the jury's finding unless there is insufficient evidence to support it.

Kennametal argues that the testimony of Ojanen, both at trial and during depositions, shows that he did in fact contemplate a preferred carbide grade at the time of filing. When asked what was the best mode of carbide grade as of April 29, 1983, Ojanen responded, "probably the one that customers seemed to be selecting the most was the grade 211F." When pressed further about what he considered to be the best grade, he responded that it would be the one that was selling best, and that was grade 211. Transcript at 1258–59, 426–27.

As the plaintiffs point out, however, there was also sufficient evidence from which the jury could reasonably have determined that Ojanen met the best mode requirement. Ojanen testified that, at the time of filing, he considered the scope of his invention to be "a new shape of insert." Tr. at 307. When asked whether he considered any particular carbide grade to be important at the time the patent was filed, Ojanen responded, "[n]o, any type of carbide grade could be used in this type of insert...." Tr. at 309. After further questioning, Ojanen indicated that at the time the patent was filed he could not have known whether a particular carbide grade was the best for his invention because GTE was at that time testing several carbide grades to be used with the insert. Tr. at 311. Therefore, I find there was sufficient evidence in the record to support the jury's determination that Kennametal did not prove by clear and convincing evidence that Ojanen knew of but failed to disclose a particular carbide grade that was the best for use in his invention.

### B. The Infringement Issue

■ A patent is infringed when every limitation set forth in a claim is found in an accused product. *Jurgens*, 927 F.2d at 1560. Where the claim limitations are present in the accused device exactly, then the accused device literally infringes the patent. However, even though an accused device does not literally infringe a claim, infringement may be shown under the equitable doctrine of equivalents where the accused device contains the substantial equivalent of those claim limitations not literally found. *Id.* In determining whether an accused device contains the substantial equivalent of a claim limitation not literally present, the test is whether it performs substantially the same overall function in substantially the same way to obtain substantially the same overall result. *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426

(1988), *cert. denied*, 485 U.S. 1009, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988). Furthermore, "[a] finding of equivalence is a determination of fact." 339 U.S. at 609, 70 S.Ct. at 857.

The question of infringement presented to the jury was limited to claims 1 and 20 of the '520 patent. In its special verdict, the jury found that although Kennametal had not literally infringed either claim, it had infringed both claims under the doctrine of equivalents. Kennametal contends that GTE was precluded by prosecution history estoppel from relying on infringement by equivalents. Furthermore, Kennametal maintains that even if use of the doctrine of equivalents was available to GTE, it was error to allow the issue to go to the jury since GTE had not developed sufficient proof.

#### 1. Prosecution History Estoppel

■ The doctrine of equivalents is an equitable doctrine which is limited by the prior art, *e.g.*, the doctrine cannot be used to cover a device found in the prior art, and by prosecution history estoppel. *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed.Cir.1985). Kennametal urges that prosecution history estoppel precludes the application of the doctrine in the instant case. The Federal Circuit has directed that "[w]henever prosecution history estoppel is invoked as a limitation to infringement under the doctrine of equivalents, 'a close examination must be made as to not only what was surrendered, but also the reason for such surrender.'" *Insta–Foam Products v. Universal Foam Systems*, 906 F.2d 698 (Fed.Cir.1990) (citation omitted). Therefore, I must begin my inquiry with a review of the prosecution history of the '520 patent. Since the parties limited the question of infringement to claims 1 and 20, I shall focus my inquiry on the prosecution history of those two claims.

The application for the '520 patent as originally filed consisted of one independent claim and nine dependent claims. Claim 1 read as follows:

A rotatable cutting bit comprising a head portion, a shank portion depending from said head portion along a longitudinal

axis, said head portion having a socket at the forward end, a hard insert having coaxially aligned an [sic] integral sections, said sections comprising a base section, a tip section, and an intermediate section contiguous said base and tip section, said base being fixedly mounted in said socket and having a first diameter, said tip section being conically shaped and having a maximum second diameter being less than said first diameter.

Pl.Ex. 2107[1] (application dated 4/29/83). The examiner rejected the application as being unpatentable over the prior art. *Id.* (office action of 5/3/84). Specifically, the examiner noted that the Stephenson patent shows a cutting bit with "a base 28, a tip 18 and an intermediate frusto-conical section between the tip and the base." *Id.* The examiner further noted that "[t]he exact angle of the tip section appears to be shown by Stephenson or Wetchwald." *Id.*

GTE then amended claim 1 to overcome the rejection as indicated in italics:

A rotatable cutting bit comprising a head portion, a shank portion depending from said head portion along a longitudinal axis, said head portion having a socket at the forward end, a hard insert having coaxially aligned an [sic] integral sections, said sections comprising a base section, a tip section, and an intermediate section contiguous said base and tip section, said base being fixedly mounted in said socket and having a first diameter, said tip section being conically shaped and having a maximum second diameter, *said intermediate section having a maximum third diameter, said second and third diameters* being less than said first diameter, *said intermediate section and said base forming a fillet at the juncture thereof whereby said base forms a shoulder with said intermediate section.*

*Id.* (amendment of 8/17/84). GTE also added new claims 11–15. With the addition of the diameter relationships and the fillet,

the claims were allowed. The patent issued on February 5, 1985 with two independent claims (claims 1 and 11) and 13 dependent claims. Claim 1 as allowed was virtually identical to the proposed amended claim 1 shown above. The other independent claim, claim 11, also contained the diameter relationships and fillet added to claim 1. The issuance of the 520 patent does not end this saga, however—Kennametal twice requested the PTO to reexamine the '520 patent.

#### a.

Kennametal filed its first reexamination request on May 18, 1987. Subsequently, on October 23, 1987, all 15 claims of the '520 patent were rejected as indefinite, anticipated by the prior art or unpatentable over the prior art. The examiner determined that claim 1 was anticipated by Russian Certificate No. 899,916, by U.S. Patent No. 3,565,418 (Healey U.S.), and by British Patent No. 1,112,446 (Healey U.K.). Pl.Ex. 2097[2] at 455 (reexamination no. 90/001,242, office action of 5/23/87). In rejecting claim 1, the examiner explained that:

The Russian Certificate '916, Healey et al and the British patent to Healey et al each disclose rotatable cutting bits including a head portion having a socket which receives a cutting insert. The Russian '916 shows an insert having a tip section 3, an intermediate section 1, and a base section 4 fixably mounted in the socket of the head portion 2. It can be appreciated that the Russian '916 shows a base section 4 having a greater diameter than either the tip section or the intermediate section. It is also noted that at the juncture of the Russian's base and intermediate sections there is formed a fillet and a shoulder.

*Id.*

GTE attempted to overcome these deficiencies by amending claims 6 and 14, by adding new claims 16–26 and by requesting

---

1. Plaintiff's Exhibit 2107 is a copy of the file wrapper of the '520 patent. Specific documents will be referred to parenthetically.

2. Plaintiffs' Exhibit 2097 is a copy of the file wrapper of reexamination file nos. 90/001,242 and 90/001,451. Specific documents cited will be referred to parenthetically.

a reconsideration of the remaining rejected claims. New claim 20 read as follows:

> *A rotatable cutting bit comprising:*
>
> *a head portion,*
>
> *a shank portion depending from said head portion along a longitudinal axis, said shank portion including means adapted for rotatably holding said bit, said head portion having a socket at the forward end,*
>
> *a hard insert comprising a carbide material, said hard insert having coaxially aligned and integral sections,*
>
> *said sections comprising a base section, a tip section, and an intermediate section contiguous said base and tip section,*
>
> *wherein substantially all of said intermediate section projects forwardly of the forward end of said head portion,*
>
> *said base section being fixedly mounted in said socket by brazing and having a first diameter,*
>
> *said tip section being conically shaped and having a maximum second diameter,*
>
> *said intermediate section having a maximum third diameter,*
>
> *said second and third diameters each being less than said first diameter,*
>
> *said intermediate section and said base section forming a fillet at the juncture thereof, whereby said base section forms a shoulder with said intermediate section.*

In its request for reconsideration, GTE argued that the Russian certificate did not cover the '520 patent because "insert" as used in the Russian document refers to the entire tool as opposed to the hard insert which is the subject of the '520 patent. GTE also urged that the '520 patent was not anticipated by Healey U.S. and Healey U.K. since those patents did not disclose a fillet. Healey U.K. was further distinguished by the fact that it referred to a non-rotatable tool. *Id.* at 508 (reexam. no. 90/001,242, amendment of 12/23/87).

The examiner allowed claims 11–26, rejected claims 1 and 4–6, and objected to claims 2, 3, and 7–10. All of GTE's argu-

ments for reconsideration were deemed unpersuasive, however, the examiner focused on GTE's arguments regarding the Healey patents. The examiner found that Healey *et al.* discloses "a curved portion 13 which is considered to be the functional equivalent of the fillet as recited in claim 1." As to Healey U.K. being non-rotatable, the examiner noted that: "The preamble of patentee's [GTE's] claim 1 is the only mention of the rotatable feature. There is no structure defined in the body of [claim 1 of the '520 patent] which would lend patentee's bit rotatable." *Id.* at 538 (reexam. no. 90/001,242, office action of 2/8/88).

GTE once again amended the claims and added claims 28–31 in an attempt to overcome the examiner's rejections. Claim 1 was amended to include portions of claim 2 as indicated in italics:

> A rotatable cutting bit comprising
>
> a head portion,
>
> a shank portion depending from said head portion along a longitudinal axis, said head portion having a socket at the forward end,
>
> a hard insert having coaxially aligned and integral sections,
>
> said sections comprising a base section, a tip section, and an intermediate section contiguous said base and tip section,
>
> said base being fixedly mounted in said socket and having a first diameter,
>
> said tip section being conically shaped and having a maximum second diameter,
>
> said intermediate section having a maximum third diameter,
>
> said second and third diameters each being less than said first diameter,
>
> *said intermediate section having a frusto-conical shape and tapering outwardly from the junction with the tip section to the junction with the base section,*
>
> said intermediate section and said base forming a fillet at the juncture thereof whereby said base forms a shoulder with said intermediate section—.

*Id.* at 546 (reexam. no. 90/001,242, amendment of 3/8/88). At this point the examiner allowed claim 1, along with 13 other

claims. However, another 13 claims, including claim 20, were rejected and the remaining four claims were objected to. The examiner premised his rejection of claims 11, 13, 14, 20, 23 through 28, and 30 on the Russian Certificate '916. Interpreting the Russian certificate, the examiner determined that it disclosed a rotatable cutting bit with an insert

> having a base section, an intermediate section, and a tip section. The base section has a maximum diameter of about twice the maximum diameter of either the tip or intermediate section. The Russian Certificate is also considered to show a fillet (r) at the juncture of the intermediate and base sections.

*Id.* at 562 (reexam. no. 90/001242, office action of 4/22/88).

Once again GTE filed an amendment. To overcome the deficiency in claim 20, GTE amended line 17 (lines 20 and 21 of claim 20 as quoted above) as indicated in italics: "said intermediate section *having an outward taper and* having a maximum third diameter." *Id.* at 657 (reexam. no. 90/001,242, amendment of 5/25/88). As amended, claim 20 was allowed, thus ending the prosecution history of claims 1 and 20. *Id.* at 680 (office action of 7/25/88).

#### b.

Kennametal filed a second reexamination request on February 29, 1988. Although the PTO initially denied the request as duplicative of the original reexamination request, *Id.* at 876 (reexam. no. 90/001,451, office action of 4/22/88), the request was ultimately granted. *Id.* at 1002 (Order Granting Request for Reexamination). The file wrapper indicates that the next action taken in this reexamination proceeding was a merger of this proceeding (reexam. no. 90/001,451) with the previously instituted proceeding (reexam. no. 90/001,-

242). *Id.* at 1011 (Decision on Merger of Reexamination Proceedings). Subsequently, GTE amended the claims in reexamination file 90/001,451 to conform with the claims in reexamination file 90/001,242 and to overcome any objections based on the Russian Certificate '916. *Id.* at 1014–35.

A reexamination certificate issued on January 17, 1989 amending claims 1–3, 6, 11, 12 and 14, of the '520 patent and adding new claims 16–36. Pl.Ex. 2. As reexamined, the patent consists of 6 independent claims (1, 11, 12, 20, 27 and 32) and 30 dependent claims. Claim 1 read as indicated above. Claim 20 had been amended slightly as part of GTE's final effort to overcome the Russian Certificate '916. Lines 20 through 23 of claim 20 as written above were amended as indicated in italics:

> said intermediate section having a maximum third diameter *and tapering outwardly away from said tip section toward said base section,*

> said *maximum* second and third diameters each being less than said first diameter *and said maximum third diameter being larger than said maximum second diameter,*

*Id.* at 1027 (amendment of 11/2/88).

The prosecution history reveals that GTE overcame the prior art by limiting the '520 patent in three respects relevant to claims 1 and 20: (1) the tip and intermediate sections were required to have maximum diameters less than the maximum diameter of the base section; (2) a fillet was required at the intersection of the intermediate and base sections, thereby forming a shoulder; and (3) the intermediate section was required to have a frustoconical[3] shape, tapering outwardly from the tip section to the base section.[4] The evidence shows that the PTO found these amendments to be crucial to the patentability of the device.[5]

---

**3.** The frustum of a cone; the solid figure formed when the top of a cone is cut off by a plane parallel to the base. *See, e.g.,* Transcript at 209.

**4.** Claim 1 requires a frusto-conical intermediate section tapering outwardly from tip to base; claim 20 does not require that the intermediate

section be frusto-conical, but does require that it taper outwardly from tip to base.

**5.** The examiner summarized his reasons for allowance as follows:

> Parent claims 1 and 12 are patentable because the prior art of record fails to disclose or suggest a rotatable cutting bit having an

▋ The claim amendments must be viewed in the context of prosecution history estoppel which "precludes a patent owner from obtaining a claim construction that would resurrect subject matter surrendered during prosecution of his patent application." *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1362 (Fed.Cir.1983). However, limiting amendments do not necessarily preclude infringement under the doctrine of equivalents. *Hormone Research Foundation, Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1564 (Fed.Cir.1990). Rather, the amendments result in a limiting effect on the range of equivalents "within a spectrum ranging from great to small to zero." *Hughes Aircraft Co.,* 717 F.2d at 1363. In the present case, I find that the effect of the prosecution history of the '520 patent was to limit GTE's infringement claim to only those devices which include the three limitations outlined above, either literally or by equivalents. I further find, as explained more fully below, that there is substantial evidence in the record to uphold the jury's determination of infringement under the doctrine of equivalents.

### 2. Proof of Infringement Under the Doctrine of Equivalents

#### a.

▋ In this case, as in many cases where a patentee invokes the doctrine of equivalents, there was little doubt that Kennametal's tips performed substantially the same overall functions and achieved substantially the same overall results as the GTE tips. *See, e.g.,* Tr. at 222–28. The real question on the infringement by equivalents issue, other than the estoppel question addressed above, was whether the Kennametal tips achieved their results in substantially the same way as the GTE tips. In answering this question, GTE was required to prove that every claim limitation in claims 1 and 20 of the '520 patent were also present in the Kennametal tips, either literally or by a substantial equivalent. *LaBounty Mfrg., Inc. v. U.S. Int'l Trade Com'n,* 867 F.2d 1572, 1577 (Fed.Cir. 1989); *Pennwalt Corp.,* 833 F.2d at 934.

. Kennametal contends that the question of infringement under the doctrine of equivalents should not have been submitted to the jury since GTE failed to submit proper proof on this issue. This contention is utterly without merit. The record is replete with instances in which GTE went through the element-by-element proofs required by *Pennwalt* and its progeny. *See, e.g.,* Transcript at 216–20 (testimony of Herbert Jakob), 348–52, 355–57, 364–68 (testimony of Randall Ojanen), 500–15, 527–29 (testimony of Dr. Carl Peterson), 627–28 (testimony of Donald Banner); *see also* Pl. Ex. 2019, 2023 (charts comparing claims 1 and 20 to the Kennametal tips). In each instance, GTE offered evidence that the claim limitations in the patent were also present in the Kennametal tips, either literally or by a substantial equivalent. Therefore, I find that there was substantial evidence to support the jury's determination that Kennametal's tips infringed the patent under the doctrine of equivalents.

#### b.

I cannot leave this issue, however, until I address Kennametal's curious contention that evidence alone is an insufficient basis for a jury to find infringement under the doctrine of equivalents. Kennametal urges that without argument by counsel which ties the evidence together, infringement by equivalents cannot be submitted to a jury.

---

insert that includes an intermediate section having a frusto-conical shape that tapers outwardly from the junction with the tip section to junction [sic] with the base section, and having a base section which has a greater diameter than the intermediate section whereby a shoulder is formed with the intermediate section as specifically recited in the claimed combination.

Further, none of the prior art of record, either singly or in combination, shows an intermediate section which tapers outwardly away from the tip toward the base and which has a maximum diameter greater than the maximum diameter of the tip section but less than the diameter of the base section, whereby the base forms a shoulder with the intermediate section as specifically recited in the claimed combination of parent claims 11, 20, 27 and 32.

Pl.Ex. 2097 at 1037 (Notice of Intent to Issue Reexamination Certificate).

In support of this notion, Kennametal cites *Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.*, 873 F.2d 1422 (Fed.Cir. 1989), and *Nestier Corp. v. Menasha Corp.-Lewisystems Div.*, 739 F.2d 1576 (Fed.Cir.1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985). I find Kennametal's reliance on these cases to be misplaced.

In both *Lear Siegler* and *Nestier* the plaintiffs presented little or no evidence on the doctrine of equivalents. In *Nestier*, plaintiff's own expert would not give an opinion on the doctrine of equivalents and Nestier's counsel stated that infringement by equivalents was not their theory of the case. The court noted that "those statements, taken in conjunction with the lack of evidence in the rest of the record to form a basis for analysis of equivalence by the jury, provide ample support for Judge Rice's decision not to include any instruction to the jury which would have required analysis of that kind of infringement." 739 F.2d at 1580. Apparently, Nestier assumed that infringement by equivalents is necessarily included in a literal infringement case. The court rejected that argument. *Id.* at 1579. *Lear Siegler* was similar in that the evidence presented on infringement by equivalents was sparse in the extreme. The only possible evidence on infringement by equivalents came in the cross-examination of one of the defendant's witnesses. This evidence was vague and did not discuss infringement in terms of the claim elements.

 I find that both of these cases stand for the proposition that a plaintiff is not entitled to a jury instruction on an issue for which there is no evidence in the record. This is, of course, horn book law which is no different in the Federal Circuit than in any other jurisdiction in the United States. The instant case is easily distinguishable from *Lear Siegler* and *Nestier* in that the record abounds with evidence on the doctrine of equivalents. *See supra.* Therefore, I find that GTE was entitled to an instruction on infringement by equivalents.

To the extent that either of the two cases suggests the need for argument explaining the evidence, I find such suggestions to be dicta. It is also horn book law that juries are bound to recall, interpret and weigh only the *evidence* in a trial, which includes the testimony of the witnesses and the exhibits in the case. Argument by counsel is not evidence. *See, e.g., Bartholomew v. Schweizer*, 217 Conn. 671, 587 A.2d 1014, 1021 (1991); *H.B.I. Corp. v. Jimenez*, 803 S.W.2d 100, 106 (Mo.App.1990); *American Livestock Ins. Co. v. Garrison*, 28 Ark. App. 330, 774 S.W.2d 431, 432 (1989). Usually the trial judge will instruct the jury on this point. *See, e.g.,* 3 E. Devitt, C. Blackmar & M. Wolff, Federal Jury Practice and Instructions § 70.03 (1987); Federal Judicial Center, Pattern Criminal Jury Instructions 2–3 (1987); Virginia Model Jury Instructions: Civil, no. 2.000 (Michie 1988 Repl.Ed.). And, indeed, I so instructed the jury. Tr. at 29–30, 1598.

 That this was a patent trial is an entirely insufficient basis for departing from established rules of evidence and procedure. Judge Howard Markey, formerly Chief Judge of the U.S. Court of Appeals for the Federal Circuit, has provided some useful guidance on this point: "[t]here is neither reason nor authority for employing in a patent trial procedures and practices different from those employed in any other civil trial. Indeed, reason and authority mandate the contrary." Markey, *On Simplifying Patent Trials*, 116 F.R.D. 369, 370 (1987). Therefore, whether or not GTE properly explained the elements of infringement by equivalents in its closing argument is irrelevant. Where there is sufficient evidence in the record on which to base an instruction on the doctrine of equivalents, the instructions, not the argument of counsel, are the appropriate vehicle for explaining the doctrine to the jury.

### C. *The Willfulness Issue*

During the trial of the case, Kennametal admitted that the originally accused tips literally infringed the '520 patent. In the special verdict, the jury indicated that GTE had proven by clear and convincing evi-

dence that Kennametal's infringement was willful during the period that the originally accused tips were manufactured and sold (2/5/85–3/4/87). Kennametal now contends that the record lacks the requisite substantial evidence to support this finding.

Kennametal points out that it began manufacturing the originally accused tools in September of 1983; the '520 patent did not issue until 2/5/85. GTE accused the defendant of infringement on 2/11/85. Pl.Ex. 535. Kennametal argues that it would have been impossible to cease production immediately on notice and that, furthermore, it was not legally required to do so, *Gustafson, Inc. v. Intersystems Indus. Products, Inc.*, 897 F.2d 508 (Fed.Cir.1990). Instead, Kennametal contends that it fulfilled its obligations by obtaining legal advice to the effect that the '520 patent was invalid, Def.Ex. 13c, and by ultimately redesigning its tips to further dissociate itself from the '520 patent.

I find Kennametal's arguments unpersuasive. As Kennametal noted in its argument, willful infringement is determined from the totality of the circumstances. Factors to be considered include:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, and (3) the infringer's behavior as a party to the litigation.

*Bott v. Four Star Corp.*, 807 F.2d 1567 (Fed.Cir.1986), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). There was clearly evidence as to at least the first two factors. GTE presented evidence that Wayne Beach, a Kennametal employee, obtained and deliberately copied the Ojanen bits. Tr. 731–33, 741–45. There was also evidence as to Kennametal's lack of a good-faith belief regarding invalidity or non-infringement. The only legal advice offered by Kennametal to rebut the finding of willfulness is a one line opinion rendered by in-house counsel Law-

rence Burns: "[i]t is not believed that either patent mentioned in Mr. Walter's letter is valid and/or infringed by your Group." Def.Ex. 13c. That the opinion was rendered by in-house counsel is cause for some suspicion. However, even if it were rendered by independent outside counsel, such a conclusory and unsupported statement falls far short of the required good faith advice of counsel. *Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380 (Fed.Cir.1983). Further suspicion was cast on the opinion by evidence that Burns rendered the opinion without having seen the file wrapper of the '520 patent. Tr. at 1135–36.

*Gustafson* offers no support for Kennametal's position. In that case the court was concerned with patentees ambushing " 'innocent' manufacturers" by filing suit "immediately after their patents issue and without warning." 897 F.2d at 511. The accused infringer in *Gustafson* was aware of the patents only as of the date suit was filed. *Id.* at 510. In the instant case, suit was filed some three months after Kennametal was put on notice. Furthermore, Kennametal's cavalier approach to obtaining legal advise suggests that it was not an "innocent" manufacturer. Therefore, I find there is substantial evidence to support the jury's finding of willfulness.

### D. *The Lost Profits Issue*

To prove causation on the issue of lost profits, GTE was required to show, by a preponderance of the evidence, the amount of sales it would have made but for the infringement. *Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 671 (Fed.Cir. 1988), *cert. denied*, 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). When considering lost profits, the usual test is the four-part test set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152 (6th Cir.1978). That is, the patent owner must prove:

> (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand,

and (4) the amount of the profit he would have made.

*Id.* at 1156. Kennametal argues only that GTE failed to prove the absence of acceptable noninfringing substitutes.

Ojanen, the inventor, admitted at trial that GTE no longer manufactures the tool depicted in the '520 patent, but instead manufactures a variation of it. Tr. at 414, 417. Kennametal urges that this variation manufactured by GTE is an acceptable, non-infringing substitute and that therefore GTE is not entitled to lost profits. Kennametal contends further that GTE did not put on evidence showing that competitors in the industry do not manufacture acceptable non-infringing substitutes.

■ Once again I find Kennametal's arguments to be unpersuasive. In explaining what proof of a noninfringing substitute entails, *Panduit* teaches that "[t]he patent owner who had proved a long-felt need for a particular invention has a lighter burden in establishing that his customers were in fact seeking to obtain the patented solution to such need or problem." 575 F.2d at 1162 (citing 3 R. White, *Patent Litigation: Procedures and Tactics* § 9.03[2] ). I find that the lighter burden is applicable here as the record contains numerous instances in which witnesses testified that the Ojanen bit was revolutionary and soon became the industry standard. *See, e.g.,* Tr. at 157 (testimony of Bob Stacy), 199–200 (testimony of Herbert E. Jakob), 295–303 (testimony of Randall Ojanen) and 468 (testimony of Daniel Mouthan). Furthermore, *Panduit* is clear that the inability of an accused infringer to avoid infringement is evidence of the non-existence of non-infringing substitutes. 575 F.2d at 1160. In the instant case, Kennametal began manufacturing the bit in 1983, continued manufacturing the bit after the patent issued in 1985, continued manufacturing the bit after suit was filed, and was unable to redesign the bit in such a way as to avoid infringement. Taking all of the relevant factors into consideration, I find that substantial evidence supports the jury's finding that GTE proved its lost profits by a preponderance of the evidence.

## II. The Plaintiffs' Motions

### A. *Enhanced Damages and Attorney Fees*

■ Where there is a finding for the claimant, 35 U.S.C. § 284 gives the court discretion to increase the damages up to three times the amount found. Under 35 U.S.C. § 285, the court may award reasonable attorney fees to the prevailing party in exceptional cases.

It is well settled that a finding of willful infringement will justify an award of exemplary damages. *See, e.g., Shiley, Inc. v. Bentley Labs, Inc.,* 794 F.2d 1561 (Fed.Cir. 1986), *cert. denied,* 479 U.S. 1087, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987); *TWM Mfrg. Co., Inc. v. Dura Corp.,* 789 F.2d 895 (Fed. Cir.1986); *Great Northern Corp. v. Davis Core & Pad Co.,* 782 F.2d 159 (Fed.Cir. 1986). A finding of willful infringement is also enough to classify the case as exceptional under § 285. *See, e.g., Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1567 (Fed.Cir.1988); *Water Tech. Corp., supra.* Therefore, I find that the evidence set forth above on the issue of willful infringement also supports a finding that the damages incurred during the period of willful infringement (2/5/85–3/4/87) should be trebled and that GTE should be awarded reasonable attorney fees expended during the period of willful infringement. The parties have agreed that $910,-000 of the damages found by the jury should be allotted to the period of willful infringement. Trebling this figure puts total damages for the period of willful infringement at $2,730,000.

### B. *Permanent Injunction*

■ Lastly, GTE has requested that I prohibit further infringement of the '520 patent by permanently enjoining Kennametal from manufacturing, selling or using the rotatable cutting bits depicted in the Kennametal drawings numbered 921–01135, 921–01152, 921–01155, 921–01171, 921–01173, 921–01196 and 921–01199. The first three drawings depict bits utilizing the originally accused tip; the last four drawings depict bits utilizing the redesigned tip.

Such equitable relief is authorized by 35 U.S.C. § 283. Kennametal agrees with GTE's contention that an injunction is the usual remedy for patent infringement, however, Kennametal requests a stay of the injunction during the pendency of an appeal. Where infringement has been proven, injunctive relief is the normal remedy. *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed.Cir.1983), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Therefore, I shall impose the permanent injunction sought by GTE and limit my inquiry on this issue to whether the enforcement of the injunction should be stayed.

I note initially that it is within my sound discretion to stay an injunction during the appeal process. Fed.R.Civ.P. 62(c). In exercising this discretion I must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). However, the Supreme Court has cautioned that "[s]ince the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton*, 481 U.S. at 777, 107 S.Ct. at 2119. With that in mind, I will proceed to the equities in this case.

In support of its request for a stay, Kennametal has submitted the affidavits of five people employed as managers or officers of road planing contractors, all five are also past or current officers or directors of the leading industry trade association.[6] Each affiant expressed strong reservations about GTE's ability to adequately

supply the demand that Kennametal's departure from the market would create. In addition, none of the five were aware of a cutting tip manufactured by GTE that is comparable to either the Kennametal 921–01196 or 921–01199 tip. The only evidence produced by GTE to rebut these charges is an affidavit of Randall Ojanen, the inventor of the GTE tip, stating that GTE could adequately supply the market and that GTE does make a tip comparable to the Kennametal 1199. Given this evidence, I find that the public interest favors granting the stay.

Although I have I applied the law to the evidence in this case to the best of my ability, I recognize that an appellate court may view the case somewhat differently than I do. While I cannot say that Kennametal has made a strong showing that it is likely to succeed on appeal, I do find that Kennametal has "a substantial case on the merits." *Hilton*, 481 U.S. at 778, 107 S.Ct. at 2120. Therefore, this factor also cuts in favor of granting the stay.

As to the remaining factors, I fail to see how GTE will be substantially injured by the imposition of a stay. GTE argues that the nature of the patent right is the right to exclude others, *Shiley, Inc. v. Bentley Labs, Inc.*, 601 F.Supp. 964, 970 (C.D.Cal. 1985), *aff'd* 794 F.2d 1561 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987). I am in complete agreement with GTE on this point—that is why I granted the permanent injunction. However, the question now is whether GTE will be substantially injured by a stay of its rights. If Kennametal posts a surety bond roughly equal to the amount of profits GTE would lose in one year, which I find to be approximately $1,400,000[7], then GTE's rights will be substantially protected. True, the inability to exclude others causes

---

6. GTE objects to the affidavits on the ground that Kennametal is attempting to place testimony into the record after the trial has been completed. I find this to be a spurious objection. Injunctive relief is an equitable remedy to be granted by the Court, not a jury. The issue was briefed and argued at a post-trial hearing at which time it was entirely appropriate for Kennametal to put forth relevant evidence.

7. This figure is based on evidence presented by Kennametal regarding its profits on the infringing tips. The evidence indicates that roughly 12% of Kennametal's selling price is profit (Def.Ex. 46) and that 1990 sales were near $12,000,000 (Def.Ex. 45).

injury in and of itself, however, I find that such injury is not substantial under the present circumstances.

GTE contends that Kennametal will not be irreparably damaged without a stay, noting that sales of the accused tools account for only about 10% of Kennametal's total sales. This argument oversimplifies Kennametal's situation. If Kennametal were to discontinue its production and sale of the infringing tools during the appeal process, it would be irreparably damaged in the market for rotatable cutting bits. Kennametal would suffer a loss of market share that it may not be able to regain. Although GTE would surely gain market share from the imposition of the injunction, any damage done to GTE by maintaining the status quo during the appeal period will be much less than the harm that would be caused to Kennametal by imposing the stay and is substantially lessened by Kennametal's appeal bond. Under the present circumstances, weighing all the *Hilton* factors, I found that the equities favor imposing a stay of the injunction during the appeal process.

## CONCLUSION

In summary I find there is substantial evidence to support the jury's verdict, and therefore Kennametal's JNOV motions must be denied. I further find, based on the jury's finding of willfulness, that the damages allotted to the period of willful infringement should be trebled and that GTE should recover reasonable attorney's fees incurred during the period of willful infringement. Finally, I find that Kennametal should be permanently enjoined from further infringement of the '520 patent, but the injunction should be stayed during the appeal of any of the issues in this case.

## JUDGMENT ORDER

For the reasons set forth in the Memorandum Opinion filed contemporaneously herewith, it is hereby ADJUDGED and ORDERED that:

1. The defendant's motions for judgment notwithstanding the verdict are DENIED;

2. The plaintiffs' motion for treble damages is GRANTED; the damages accrued during the period of Kennametal's willful infringement ($910,000 principal) shall be TREBLED resulting in damages for the period of willful infringement totalling $2,730,000; when added to the amount of damages accrued during the period nonwillful infringement ($3,280,000 principal) the total damages amount to $6,010,000; wherefore, judgment is hereby GRANTED to the plaintiffs against the defendant in the amount of $6,010,000 to bear interest at the rate of 6.09% from the date of this Judgment until paid; the parties have stipulated that the jury's damage award accrued interest of $1,110,000 ($450,000 during the period of willful infringement and $660,000 during the period of non-willful infringement); wherefore judgment is hereby ENTERED for prejudgment interest in the amount of $1,110,000;

3. The plaintiffs' motion for attorneys' fees is GRANTED; the plaintiffs shall recover from the defendant reasonable attorney fees incurred during the period of willful infringement; the plaintiffs shall submit affidavits detailing such fees;

4. The plaintiffs' motion for a permanent injunction is GRANTED; defendant Kennametal, Inc. (to include the officers, agents, servants, employees, successors in interest and assignees of Kennametal, Inc.) and any other person, corporation or organization acting in concert with Kennametal, Inc. is permanently ENJOINED during the life of U.S. Patent No. 4,497,520 (the '520 patent) from:

a. manufacturing, using or selling, or inducing the manufacture, use or sale of any products which infringe claims 1 or 20 of the '520 patent; and

b. manufacturing, using or selling the rotatable cutting bits depicted in the Kennametal drawings numbered 921–01135, 921–01152, 921–01155, 921–01171, 921–01173, 921–01196 and 921–01199, or any colorable copies thereof;

5. The imposition of the permanent injunction set forth in paragraph four of this Order shall be STAYED during the pendency of an appeal of any issue in this action, provided that Kennametal shall execute a surety bond in the amount of $1,400,000.

The Clerk is directed to retain this case on the Court's active docket only for the purpose of determining reasonable attorney fees.